[No. A051071. First Dist., Div. Two June 20, 1991.]

In re DAVID LEWIS NICKLES on Habeas Corpus.

**COUNSEL**

Ruby Udell Grad, under appointment by the Court of Appeal, for Petitioner.

Daniel E. Lungren, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Morris Beatus and Herbert F. Wilkinson, Deputy Attorneys General, for Respondent.

**OPINION**

**PETERSON, J.**—While on parole, petitioner David Lewis Nickles was arrested in Solano County on firearm and drug charges. His parole was revoked based on those same criminal allegations and on two administrative violations. He served a revocation term and was returned to Solano County to face the criminal charges. Pursuant to a negotiated disposition, petitioner pled nolo contendere to the firearms count. In sentencing petitioner, however, the trial court gave him no presentence credit for his parole revocation

term. Petitioner now seeks credit pursuant to Penal Code[1] section 2900.5 for the time spent in prison on the parole revocation. We will hold that, where a defendant's presentence custody arises from conduct which is only partially attributable to the conduct for which he was convicted and sentenced, he has the burden of proving entitlement to credit therefor. That burden was not discharged in this case.

## I. FACTS AND PROCEDURAL HISTORY

Petitioner is a criminal recidivist[2] who was on parole from his most recent conviction and commitment to CDC when arrested for the offenses here pertinent.

On April 17, 1988, petitioner was arrested and charged, in case No. C26526 in Solano County, with one count of firearm possession by a felon, one count of possession for sale of methamphetamine, and one count of manufacturing a controlled substance other than phencyclidine (case No. C26526). These felony charges were dismissed due to the inability of the prosecution to complete testing of the evidence seized. Petitioner was released from Solano County to the CDC on June 14, 1988, to begin serving his 12-month parole revocation term, which was imposed on May 4, 1988, by the Board of Prison Terms. His parole was revoked based on the following five grounds: (1) absconding while on parole, (2) failure to test for drug ingestion, (3) possession of a controlled substance for sale, (4) manufacturing controlled substances, and (5) possession of a firearm by a felon. The last three grounds were attributable to the criminal charges which had been pending against him in case No. C26526; the first two grounds were not. Those last three charges were refiled against petitioner in Solano County on August 16, 1988, while he was serving the parole revocation term in CDC from which he was released on March 16, 1989.

On March 20, 1989, petitioner was arraigned in case No. C26526. On April 26, 1989, petitioner was arrested and charged with a new drug offense—possession for sale of methamphetamine—in case No. C26528 (case No. C26528).

---

[1] Unless otherwise indicated, all subsequent statutory references are to the Penal Code.

[2] His convictions and prior commitments are these: 1966—hit and run, camp escape (Welf. & Inst. Code, § 602), California Youth Authority; 1973—possession of drugs for sale (Health & Saf. Code, § 11911 (now § 11378)), California Department of Corrections (CDC); 1976—receiving stolen property (§ 496), CDC; 1979—burglary (§ 459), CDC; 1982—possession of a controlled substance (Health & Saf. Code, § 11377), CDC; 1986—possession of drugs with intent to manufacture methamphetamine, etc. (Health & Saf. Code, § 11383), CDC. Petitioner was on parole from this 1986 commitment when his arrest germane to the instant case occurred.

On May 22, 1989, two informations were filed against petitioner. The first information (case No. C26526) alleged one count of firearm possession by a felon; it also alleged that petitioner had suffered two prior felony convictions within the meaning of section 667.5, subdivision (b) (section 667.5(b)). The second information (case No. C26528) alleged one count of possession for sale of methamphetamine and the same two prior felony convictions alleged in the first information; it further alleged that one of those two convictions was a conviction within the meaning of Health and Safety Code section 11370, subdivisions (a) and (c), and that petitioner was on bail at the time he committed the offense.

On July 17, 1989, petitioner pleaded nolo contendere to the substantive counts in both cases and to one section 667.5(b) enhancement in case No. 26528. All other enhancements were stricken. On July 31, 1989, the trial court sentenced petitioner to three years and eight months as follows: two years for the Health and Safety Code section 11378 violation, one year for the section 667.5(b) enhancement, and eight months for the possession of a firearm violation. This sentence was in accordance with petitioner's negotiated plea.

Petitioner filed notices of appeal in both cases which were given the same docket number (No. A046890). Counsel for petitioner filed an opening brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. On February 25, 1990, this court filed its unpublished opinion. We concluded there were no arguable issues within the meaning of *People v. Wende, supra,* and affirmed the judgment. We also found there was no sentencing error and that petitioner was sentenced in accordance with his negotiated plea. The remittitur issued April 30, 1990.

The judgment under review in No. A046890 did not fix the credits for time served, but specifically left them to be determined at a later date. On May 10, 1990, petitioner moved for presentence credit on the firearm charge in case No. C26526 for the time spent in prison on the parole violation. The trial court, relying on *In re Joyner* (1989) 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967], denied the motion on May 25, 1990. This petition followed. We issued an order to show cause and appointed counsel to represent petitioner.

II. Discussion

Petitioner claims additional presentence credit against his Solano County sentences, for the period of time he was returned to CDC as a parole

violator,[3] because *some* of the grounds on which his parole was revoked were attributable to proceedings relating to the same conduct (firearm possession and possession for sale of methamphetamine) for which he was convicted and sentenced in Solano County. (See § 2900.5, subd. (b).) We disagree.

## A. *Applicable Law*

Section 2900.5, subdivision (a) provides that "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, including . . . any time spent in a jail, . . . all days of custody of the defendant . . . shall be credited upon his term of imprisonment . . . ." Subdivision (b) states further that "For the purposes of this section, credit shall be given only where the custody to be credited is *attributable to proceedings related to the same conduct for which the defendant has been convicted.*" (Italics added.)

This case is one where the presentence custody of petitioner is attributable to his mixed conduct; i.e., both to conduct which is, and conduct which is not, attributable to the proceedings related to the conduct for which he was convicted and sentenced.

"The issue of what custody is 'attributable to proceedings related to the same conduct' as that for which a defendant is to be sentenced has provoked a considerable quantity of appellate literature, much of it conflicting" (*People* v. *Huff* (1990) 223 Cal.App.3d 1100, 1104 [273 Cal.Rptr. 44]); and section 2900.5, subdivision (b) (section 2900.5(b)) is widely recognized to be " 'difficult to interpret and apply' " (*People* v. *Adrian* (1987) 191 Cal.App.3d 868, 874-875 [236 Cal.Rptr. 685]).

 The threshold question, however, is who has the burden of proving entitlement to presentence credits where mixed conduct resulted in petitioner's incarceration on his parole revocation and return to CDC. The lower court ruled petitioner had that burden and offered him the opportunity to carry it by providing further evidence on this issue. Petitioner chose not to do so, relying on *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910].

---

[3]The official evaluation regarding this parole revocation stated: "Subject's parole adjustment has been non-existent. Mr. Nickles has absconded from the gate the last *two* times out of prison. He continues to be involved in manufacturing drugs and is not willing to complete a successful parole. Further incarceration is warranted." (Italics added.)

B. *Supreme Court Authority*

Three Supreme Court cases, including *Atiles, supra,* have principally dealt with this issue and with the meaning and application of section 2900.5(b).

■ Where presentence custody results *solely* from another offense, no credits are awarded. (*In re Rojas* (1979) 23 Cal.3d 152 [151 Cal.Rptr. 649, 588 P.2d 789].)

In *Atiles,* defendant committed robbery while on parole and sought credits against the robbery sentence for time spent in the county jail awaiting his robbery trial. He could not post bail because of a CDC "hold" placed on him for parole violation. The People argued that the parole hold was attributable to a parole violation (drinking alcoholic beverages) *not* based on the same conduct as the criminal charge of robbery, as well as that robbery; and on an act of sodomy criminally charged both as a crime, apparently connected with the robbery, and as a parole violation. The *Atiles* court said, in awarding the credits sought: "We are satisfied that the Legislature intended that 'custody . . . attributable to proceedings related to the same conduct for which the defendant has been convicted' include time in presentence custody during which a restraint or restraints related to that conduct made it impossible for the defendant to obtain his freedom, *regardless of whether the defendant was also subject to other restraints on his liberty.*" (33 Cal.3d at p. 811, italics added.) In short, *Atiles* "suggested a policy of construing section 2900.5 to maximize credit for concurrent terms proposed at different times" (*People* v. *Huff, supra,* 223 Cal.App.3d at p. 1104), and was interpreted to mean that "the defendant need only show that the charge as to which he seeks credit was *a basis, not necessarily the exclusive basis,* for the custody" (*In re Joyner, supra,* 48 Cal.3d at p. 496 (dis. opn. of Broussard, J.), italics added).

In 1989, the Supreme Court decided *Joyner,* disapproving the *Atiles* interpretation of section 2900.5(b). *Joyner* involved a defendant who was arrested in Florida; while in jail there for offenses for which he received a Florida prison term, a California "hold" was placed on him. Following his Florida conviction, he was there sentenced and given presentence custody credit by the Florida court. Extradited to California, he continued to serve his Florida sentence both before and after sentencing in this state. Relying on *Atiles,* defendant sought presentence custody credits in California for his custody time in Florida and California after the California hold was placed on him, all of which time had been theretofore credited against his Florida sentence. The Supreme Court rejected this claim, holding "that a period of time previously credited against a sentence for unrelated offenses cannot be

deemed 'attributable to proceedings' resulting in a later-imposed sentence *unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation. Under this test, [defendant] has not demonstrated entitlement to the credits he seeks."* (*In re Joyner, supra,* 48 Cal.3d at p. 489, italics added.)

After favorably citing cases from other jurisdictions supporting a "strict causation" analysis in denying credits (48 Cal.3d at p. 493), *Joyner* characterized *Atiles* as having gone "astray" in its discussion of the legislative purpose of section 2900.5(b), concluding: "To the extent that *Atiles* has been read as suggesting that section 2900.5 should be applied invariably to maximize the concurrency of terms imposed at different times *we disavow the suggestion.*" (P. 494, italics added.) *Joyner* explained *Atiles* as "a case in which the *same criminal conduct* resulted both in revocation of parole and the filing of new charges" (p. 493, italics added), while recognizing that the variety and complexity of presentence issues would raise future unresolved questions. "We acknowledge that determining entitlement to presentence credits for concurrent terms imposed in multiple proceedings raises a number of troubling questions. *We do not expect that this decision will resolve them all* and we recognize that any rule or combination of rules is likely to produce some incongruous results and arguable unfairness when compared to a theoretical state of perfect and equal justice. Recognizing there is no simple or universal formula to solve all presentence credit issues, *our aim is to provide for section 2900.5 a construction* which is faithful to its language, which produces fair and reasonable results in a majority of cases, and *which can be readily understood and applied by trial courts.*" (*Id.* at p. 495, italics added.)

## C. *Appellate Decisions After Joyner*

Subsequent to *Joyner,* at least two cases have applied its "strict causation" rule to a mixed conduct case.

### 1. *Odom*

The Third District decided a mixed conduct case in *People v. Odom* (1989) 211 Cal.App.3d 907 [259 Cal.Rptr. 827]. Odom was placed on probation following a felony conviction in Sacramento County. While on probation, he was arrested and jailed on unrelated charges in Placer County. Sacramento County placed a probation hold on him in Placer County on July 27, 1987, three days after his arrest.

Released by Placer County on October 13, 1987, he remained in custody there on the Sacramento County hold until October 21. He received no presentence credit in the Sacramento County case for the July 27 to October 13 period. The *Odom* court held that the record defendant presented was "insufficient to prove and thus satisfy the strict causation requirement of *Joyner*," i.e., to prove that "but for" the Sacramento County hold his incarceration from July 27 to October 13 would not have occurred. (211 Cal.App.3d at p. 910.)

### 2. *Huff*

*Huff, supra,* a Second District case, held as follows: "The burden of establishing the strict causation, 'but for' test of *Joyner* is with the [defendant] who claims credit for time in custody on other charges." (223 Cal.App.3d at p. 1105, citing *Odom, supra.*)

*Huff*'s facts are more convoluted than those of *Odom*, concerning a mixed conduct case where defendant (unlike Odom) carried his burden of establishing the strict causation "but for" test of *Joyner* entitling him to presentence credits. Defendant in *Huff*, in early 1988, pled guilty to drug possession (Health & Saf. Code, § 11377, subd. (a)); judgment and sentence were suspended, and he was placed on three years' probation. Later that year, on December 7, Huff was stopped for speeding; officers were suspicious he was driving a stolen vehicle but did not arrest or detain him therefor. Those suspicions were aroused by an apparently improper vehicle registration sticker on the license plate (Veh. Code, § 4463, subd. (a)) coupled with Huff falsely identifying himself by name while giving his correct Social Security number. Huff was detained regarding the Vehicle Code registration violation. At the police station, from investigation of his correct Social Security number, his true name was learned; several traffic warrants outstanding against him were discovered. His detention terminated, and he was released when he apparently paid the outstanding fines generating those warrants.

In January 1989, the police concluded they had sufficient proof to charge Huff with grand theft (§ 487, subd. 3) of the auto he was driving in December and arrested him therefor on January 17. He was arraigned February 7, 1989, on the auto theft charge; his probation in the earlier and separate drug possession case was summarily revoked March 27, 1989; and the auto theft charge was dismissed on April 24, 1989, when the People could not timely proceed as required by section 1382. Huff was then released.

Probation revocation proceedings continued, however, in the 1988 drug possession case; and Huff was sentenced to a midterm of two years on that charge.

*Huff* commented upon "the four weeks between the summary revocation of probation [on the drug possession conviction] and remand without bail on March 27, 1989, and the dismissal of the new charges [grand theft auto] on April 24, 1989," observing "Analytically, *the detention* during that overlap period *was due to both cases.* And, as we have seen, *it is [defendant's] burden, as the party claiming credit, to demonstrate his entitlement to credit for that period.*" (223 Cal.App.3d at p. 1106, italics added.)

The *Huff* court found it evident from the record that after March 27, 1989, defendant was remanded without bail on the revocation of his probation granted following his drug conviction, and that he could not have secured his release from jail on the unrelated auto theft charge even if he had made bail. Hence, the court said defendant carried his burden of satisfying the strict causation test of *Joyner*, i.e., but for the probation revocation and remand without bail on the drug charge "he could have obtained his freedom." (*People* v. *Odom, supra,* 211 Cal.App.3d at p. 910; cf. also *People* v. *Gibbs* (1991) 228 Cal.App.3d 420, 424 [278 Cal.Rptr. 338].)

Thus, both the Third District (*Odom*) and the Second District (*Huff*) have interpreted *Joyner* in mixed conduct cases. In *Odom*, the defendant did not carry his burden, and credits were denied. In *Huff*, the reverse was true, and credits were granted.

D. *Application of Precedent to This Case*

 Our review of the relevant case law shows that petitioner simply erroneously relied on *Atiles* in contending that, if *any* of his conduct attributable to the offenses for which he was sentenced occurred while he was on parole and was a ground of parole revocation, the parole revocation term he received was a presentence credit to be applied against that sentence.

The trial court properly applied the strict causation test of *Joyner* as followed by *Odom* and *Huff*. The factual issues the trial judge, thus, had to consider here in applying section 2900.5(b) were these: (1) Would petitioner/ parolee have been at liberty (free of incarceration for parole violation) absent his custody (in CDC as a parole violator) being attributable to proceedings related to the same conduct for which he was subsequently sentenced in Solano County? If so, presentence credits are applicable. (2) Conversely, would petitioner/parolee have been returned to CDC as a parole violator on grounds having nothing to do with the proceedings relating to the same conduct for which he was subsequently so sentenced, i.e., for absconding twice while on parole and failing to test for drug ingestion while on parole? If so, such presentence credits are inapplicable.

The trial court offered petitioner the opportunity to prove by official records or testimony that, but for the three grounds of parole revocation attributable to his criminal offenses committed while on parole, he would not have served a parole revocation term. No such proof was offered and that issue could not, as in *Huff*, be resolved from the record. Petitioner failed to carry the burden established by *Joyner* and acknowledged by *Odom* and *Huff*, and presentence credit was properly denied.[4]

E. *Conclusion*

In summary, *Atiles* is clearly no longer authority for the proposition that section 2900.5(b) automatically requires a trial court to grant presentence credit in a mixed conduct case simply because the charge as to which a defendant seeks credit was one basis of his restraint combined with unrelated other bases therefor. Justice Broussard's dissent in *Joyner, supra,* makes it perfectly clear that the *Atiles's* interpretation of section 2900.5(b) was the focal point of *Joyner's* "disavow[al]" of *Atiles* in its adoption of the "strict causation" test. After *Joyner*, the defendant has the burden in every mixed conduct case to prove entitlement to presentence custody credits by showing that such custody was "strict[ly] caus[ed]" by the same conduct for which he is convicted and to be sentenced.

III. DISPOSITION

The application for a writ of habeas corpus is denied.

Smith, J., concurred.

KLINE, P. J., Dissenting.—The majority opinion characterizes *In re Joyner* (1989) 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967] as, in effect, overruling *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910]. Though our Supreme Court may well adopt that position, it has not heretofore done so. It is not the function of an intermediate appellate court to anticipate Supreme Court action.

---

[4]The application of *Atiles* urged here by petitioner would substantially undercut the state's recognized policy concerning increased penalties for recidivists. Increased penalties for recidivists exist because "an offender undeterred by his *prior brushes with the law* deserves more severe criminal treatment. [Citation.]"; the reason for this "*is not so much that defendant has sinned more than once as that he is deemed incorrigible when he persists* in violations of the law after convictions of previous infractions." (*People v. Rojas* (1988) 206 Cal.App.3d 795, 798, 799 [253 Cal.Rptr. 786], italics in original, internal quotation marks omitted.) The credit of a parole revocation term against a later sentence for a criminal offense, without showing the former was strictly caused by that offense, would reward rather than deter criminal recidivism.

The present case is materially indistinguishable from *In re Atiles*. *Atiles* is still good law. I respectfully dissent because I do not believe we are free to ignore it.

*Joyner* does not necessarily spell the demise of *Atiles* because the two cases are factually distinguishable. *Joyner* involved two unrelated offenses committed in Florida and California. The petitioner was arrested in Florida and kept in jail due to the outstanding warrant in California. In denying credit on the subsequent California sentence for the Florida jail time, the Supreme Court held that "duplicative credits against separately imposed concurrent sentences for *unrelated offenses* will be granted only on a show-ing of strict causation," a showing which Joyner failed to make. (*Joyner, supra*, 48 Cal.3d at p. 489, italics added.) The *Joyner* "strict causation" test is inapplicable in determining credit on the firearm charge in the instant case because that conduct also formed a basis for the parole hold and subsequent revocation proceedings. The offenses were therefore related, not unrelated as in *Joyner*.

It is true that *Joyner* disapproved certain sweeping dicta in *Atiles* suggest-ing that dual credit should be maximized wherever there are concurrent terms. (*Joyner, supra*, 48 Cal.3d at p. 494.) However, the court did not disagree with the result in *Atiles* or the analysis it prescribed where the conduct on the two offenses is related. In fact, *Joyner* expressly acknowl-edges that *Atiles* was a " 'same conduct' case" (*id.*, at p. 493), which strongly suggests that *Atiles* remains applicable in that context.

Neither *People v. Odom* (1989) 211 Cal.App.3d 907 [259 Cal.Rptr. 827] nor *People v. Huff* (1990) 223 Cal.App.3d 1100 [273 Cal.Rptr. 44] suggests that *Atiles* is no longer authoritative and should not be followed in cases presenting factually similar contexts.

In *Odom* the defendant's probation was revoked for conduct *predating the offense* for which he was arrested and jailed. (*Odom, supra*, 211 Cal.App.3d at p. 909.) Because the time which the defendant served on the second offense was unrelated to the probation revocation, the court applied the strict causation test of *Joyner*.

*Huff* simply stands for the unremarkable proposition that in mixed conduct cases the burden is on the defendant to show that the custody for which credit is sought "is attributable to proceedings related to the same conduct for which the defendant has been convicted." (Pen. Code, § 2900.5, subd. (b).) The majority's conclusion that defendant in this case has not sustained this burden converts *Huff* into a far more onerous test than the court in that case, or any other court, has ever contemplated. In effect, the majority is

rendering *Atiles* meaningless by unjustifiably imputing to *Joyner* an evidentiary requirement that can rarely be met.

The evidence in the instant case concerning parole revocation consists of a document entitled "Summary of Parole Adjustment." This document indicates that petitioner's parole was revoked based on the following five grounds: (1) absconding; (2) failure to test; (3) possession of controlled substance for sale; (4) manufacturing controlled substances; and (5) possession of a firearm by a felon. The last three grounds were the basis of the new criminal charges pending against petitioner at the time of his parole revocation hearing. The evaluation of the parole officer set forth in the summary emphasized not only that petitioner absconded on two occasions, but that "[h]e continues to be involved in manufacturing drugs . . . ." Thus, the pertinent available evidence demonstrates that the decision to revoke petitioner's parole was based on the new charges as well as the administrative violations. The People have presented no evidence to the contrary. Thus, I believe petitioner has met his burden of showing that the custody for which credit is sought "is attributable to proceedings related to the same conduct for which the defendant has been convicted." (Pen. Code, § 2900.5, subd. (b).)

For the foregoing reasons, I would grant the writ of habeas corpus.

Petitioner's application for review by the Supreme Court was denied September 5, 1991.