[Nos. A055866, A055867. First Dist., Div. Two. Dec. 18, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
JERELD EDWIN PURVIS, Defendant and Appellant.

COUNSEL

George L. Mertens, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Stan M. Helfman and Thomas A. Brady, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**BENSON, J.**—Jereld Edwin Purvis (sometimes spelled "Jerald" in the record) was charged with passing a forged check and stealing an automobile. During most of the pendency of the case he was confined on the basis of a parole revocation which rested partly on these same offenses. After he pleaded guilty to these charges, the trial court refused to allow more than one day's credit for the presentence confinement. Defendant asserts that this was error. We reaffirm our holding in *In re Nickles* (1991) 231 Cal.App.3d 415 [282 Cal.Rptr. 411], review denied, that the defendant bears the burden of showing that the confinement for which he seeks credit would not have occurred but for the misconduct for which he was sentenced. Like the defendant in *Nickles*, defendant has failed to carry that burden. Accordingly, we affirm the judgment.

### BACKGROUND

In March 1987 defendant was sentenced to 16 months in state prison on convictions of forgery (Pen. Code, § 470) and felony taking of an automobile (Veh. Code, § 10851). Due to successive parole violations he had not yet been discharged from custody as of the date of the instant offenses. However, as of October 24, 1990, he was free on parole.

On March 25, 1991, defendant took numerous items, including a checkbook, from the home of his grandfather. He cashed one or more checks at a bank. On April 7, 1991, he failed to return a car after he acquired possession by promising to repair it.[1] On April 10, 1991, he was arrested for parole violations consisting of the above two occurrences as well as providing false identification to an officer, using methamphetamines and alcohol, absconding, and failing to comply with directions from his parole officer.

On April 19, and May 6, 1991, defendant was charged in two separate complaints with burglary, forgery, and auto theft. Each complaint alleged a sentence enhancement based on defendant's suffering a prior conviction and imprisonment. Defendant ultimately pleaded no contest to one count of forgery and one count of auto theft, admitting the enhancement.

The court sentenced defendant to four years in prison on the forgery count plus the enhancement, with three years to be served concurrently on the auto theft count. With respect to credit for time already served, the probation

---

[1] Two weeks before the theft, the victim had met defendant at an Alcoholics Anonymous meeting and had agreed to let defendant stay with him and his family until defendant could get "situated."

report stated that defendant had spent only one day in custody in connection with the charged offenses, and was therefore entitled to only one day of credit. Defense counsel disputed this assessment, asserting that defendant should receive credit for the entire period following his arrest on April 10, or at least from his subsequent arrest while in prison on September 6. The prosecutor noted that this argument "assumes a lot," including that the time in prison "was based upon conduct in this case." The prosecutor suggested that the defense might request a continuance "for a probation investigation into the question of custody," in that the court was otherwise "being asked to kind of speculate and make assumptions on exactly what they are doing at CDC." No continuance was requested. The court allowed one day's credit on each count.

Defendant brought two separate appeals raising identical arguments. We granted his motion to consolidate the appeals.

## ANALYSIS

■ Defendant contends that he is entitled to presentencing credit for time in confinement from April 10 (or Sept. 6) until he was sentenced on November 20, 1991. Penal Code section 2900.5, subdivision (a), provides that time spent in confinement before sentencing shall be credited against any prison term ultimately imposed. Subdivision (b) limits such credit to situations "where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted."

Defendant's parole officer indicated that defendant's initial arrest on April 10 for parole violations was based *in part* on the forgery and auto theft underlying the present conviction. However, defendant was charged with five additional parole violations unconnected with these charges, i.e., providing false identification to an officer, using methamphetamines, using alcohol, "absconding," and failing to comply with directions from his parole officer. Accordingly this is a case of "mixed conduct," i.e., "one where the presentence custody of [defendant] is attributable . . . both to conduct which is, and conduct which is not, attributable to the proceedings related to the conduct for which he was convicted and sentenced." (*In re Nickles, supra*, 231 Cal.App.3d at p. 419.)

In *Nickles* we held that "the defendant has the burden in every mixed conduct case to prove entitlement to presentence custody credits by showing that such custody was 'strict[ly] caus[ed]' by the same conduct for which he is convicted and to be sentenced." (231 Cal.App.3d at p. 424.) That holding rested largely on *In re Joyner* (1989) 48 Cal.3d 487, 489 [256 Cal.Rptr. 785,

769 P.2d 967], where the Supreme Court held that credit is not allowed "unless it is demonstrated that the claimant would have been at liberty . . . were it not for a restraint relating to the proceedings resulting in the later sentence. In other words, duplicative credits against separately imposed concurrent sentences for unrelated offenses will be granted only on a showing of strict causation."

Under these holdings, defendant had the burden of showing that but for the conduct underlying the forgery and auto theft charges he would have been at liberty during the period in question. This he failed to show. He had apparently violated his parole in numerous respects apart from his commission of forgery and auto theft. He was not scheduled to be released until December 9, 1991, two-plus weeks after he was sentenced on the instant offenses. It therefore does not appear that his presentence confinement was "attributable" to the instant offenses, or in the words of *Joyner* and *Nickles*, was "strictly caused" by them.

Defendant asserts that *Nickles* conflicts with *In re Atiles* (1983) 33 Cal.3d 805 [191 Cal.Rptr. 452, 662 P.2d 910]. We specifically considered the *Atiles* case in *Nickles*, concluding that the Supreme Court in *Joyner* disapproved the *Atiles* treatment of mixed-conduct cases. (231 Cal.App.3d at pp. 420-421.) Defendant's arguments concerning our duty to follow higher authority assume that we misinterpreted *Joyner*, a point with which we do not agree.

Defendant asserts that *Nickles* is flawed by its reliance on cases concerning *probation* revocation, as distinct from *parole* revocation. He contends that *People* v. *Blunt* (1986) 186 Cal.App.3d 1594 [231 Cal.Rptr. 588], establishes a crucial distinction between confinement resulting from probation revocation and confinement resulting from parole revocation. The cited passage establishes at most that time in confinement on a probation revocation, if properly analyzed, is less likely to operate as a credit against a pending criminal charge than is time spent upon revocation of parole. (*Id.* at pp. 1600-1601.) The reason for this is that confinement on probation revocation is attributed to the underlying offense, whereas parole revocation is more commonly treated as a transgression in its own right. (*Ibid.*) This premise, sound or not, is irrelevant to any issue before us. It played no role in the probation cases cited in *Nickles*, i.e, *People* v. *Odom* (1989) 211 Cal.App.3d 907 [259 Cal.Rptr. 827]; *People* v. *Huff* (1990) 223 Cal.App.3d 1100 [273 Cal.Rptr. 44]. Accordingly, it did not render those cases inapposite or otherwise weaken them as authority on the points for which we cited them.

Defendant attempts to distinguish *Nickles* on the ground that the probation report here affirmatively shows that the initial confinement was partly

attributable to conduct underlying the present convictions. We fail to see how this differs from *Nickles*, where the record established that the defendant was in custody on five parole violations, three of which were related to the criminal charges in question and two of which were not. (231 Cal.App.3d at p. 417.) If anything, the facts here are more favorable to a denial of credit since the parole revocation rested on seven charges, only two of which are related to the criminal conviction against which credit was sought.

Defendant seems to imply that he would not have been charged with parole violations at all if not for the present offenses. Such a hypothesis is unsupported by evidence or reason, particularly in view of the fact that the other five grounds for parole revocation included such serious matters as substance abuse, absconding, and refusing to comply with the parole officer's directives. In the absence of an affirmative indication to the contrary we must conclude that defendant would have been confined for these other parole violations regardless of the present offenses.

Defendant emphasizes that on September 6 and September 11, 1991, while confined at Vacaville State Prison, he was arrested in connection with the present charges. This fact is evidenced only in the probation report, which indicates that the arrests were made in conjunction with "removal orders," presumably issued under the authority of pertinent statutes.[2] Penal Code section 2620 provides for removing a prisoner from state custody to permit his or her production in a pending court proceeding. In such a case, the statute provides, the prisoner "shall remain in the constructive custody of the warden." (*Ibid.*) We fail to see how these in-custody arrests, which presumably consisted of serving bench or arrest warrants, establish "strict causation" for purposes of the *Joyner-Nickles* rule. It does not appear that in the absence of the arrests defendant would have been at liberty. On the contrary, the probation report indicates that he was to remain confined on the parole violations until December 1991, after the sentence here was imposed.

■ Finally defendant contends that the hearing was fundamentally unfair in that the sentencing court cut off discussion of the presentence custody issue and peremptorily ruled against him without soliciting further information which might have permitted an informed determination whether he was entitled to additional custody credit. It is true that the court's ruling appears

---

[2]No removal orders are found in the clerk's transcript. Also missing are the "bench warrants" reportedly issued on April 30 and May 10, as well as attachments to the declarations in support of an arrest warrant.

somewhat terse, if not abrupt.[3] It is also true that the court was under a statutory duty "to determine the date or dates of any admission to, and release from custody prior to sentencing, and the total number of days to be credited pursuant to this section." (Pen. Code, § 2900.5, subd. (d).) The purpose of this requirement is "to provide for determination of presentence credits at the time of sentencing, to assign the task of resolving factual and legal disputes to the sentencing court, and to insure an adequate record for appellate review and administrative application." (*People* v. *Blunt, supra,* 186 Cal.App.3d at p. 1601.)

The court complied with the letter of the statute by determining that defendant was entitled to one day of credit for time served on April 10, 1991. Any difficulty in reviewing this determination is due largely to evidentiary gaps in the file. The defense, which bore the burden of proving an entitlement to further credits, never requested a continuance for the purpose of filling those gaps, despite the prosecution's suggestion that it do so. Had the defense requested a continuance and investigation by the probation department, the trial court might have been obliged to grant it. However, we are not prepared to hold that the court had a duty to order such a continuance and investigation on its own motion.

---

[3]"THE COURT: Comment on credits.

"Ms. MARCOVECCHIO: Judge, I have noticed that in the probation report . . . there shows one day actual custody credits and that dates back to April the 10th, the day of his arrest. That same day, apparently, Mr. Purvis was returned to CDC on a parole violation and remained there until September 6th when he was removed and brought here upon his arrest at Vacaville for these . . . crimes. I believe that notwithstanding his parole violation . . . that because of his arrest on April the 10th, 1991, that his credits should go back to that date. He was arrested on these particular crimes that particular date. The fact that he was taken to—CDC doesn't, unfortunately, indicate whether he was taken back for a hearing or whether he received a sentence on that date. Doesn't indicate when, if at all, he was ordered to serve a particular amount of time for violating his parole.

"But notwithstanding, I feel that since there was an arrest [e]ffected on April the 10th that his credits should go back to that date.

"Ms. RYAN: Well, your honor, I think that kind of assumes a lot. It assumes that he was not released from custody on the incident when taken back to CDC, assumes that the violation at CDC was based upon conduct in this case. I don't know we have that information. Perhaps if counsel wants to put it over for a probation investigation into the question of custody, being asked to kind of speculate and make assumptions on exactly what they are doing at CDC, whose custody he was in.

"THE COURT: Entitled to one day custody in each file.

"Ms. MARCOVECCHIO: Judge, is there any indication in the court's file as to whether he was cited out or O.R. to go to state prison. If he was under arrest out of this county I think that there is some basis for the court making a different order.

"THE COURT: That's the order.

"Ms. MARCOVECCHIO: Excuse me, judge, before we leave the Purvis matter I wonder if the court would sentence that since the removal order was filed on September the 6th and another arrest was [e]ffected at Vacaville on these two particular crimes the court would consider ordering credit from that day, that is September the 6th.

"THE COURT: No."

We hold that the record before us fails to establish any error in the calculation of credits. Should defendant acquire evidence demonstrating that he was entitled to additional credits, nothing in this decision is intended to preclude a resort to such other remedies as may be available to him.

The judgment is affirmed.

Smith, Acting P. J., and Phelan, J., concurred.

A petition for a rehearing was denied January 19, 1993, and appellant's petition for review by the Supreme Court was denied March 11, 1993.