[No. H028212. Sixth Dist. Apr. 4, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
REGINO GONZALEZ, Defendant and Appellant.

## COUNSEL

Kathleen W. Novoa, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Laurence K. Sullivan and Catherine A. Rivlin, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**McADAMS, J.**—Defendant Regino Gonzalez appeals from his convictions for possession of a firearm by a felon (Pen. Code,[1] § 12021, subd. (a)(1)), auto theft (Veh. Code, § 10851, subd. (a)), and misdemeanor resisting or obstructing a public officer (§ 148, subd. (a)(1)). At the time he committed these offenses, defendant was on probation for domestic violence. His probation was subsequently revoked. While awaiting trial in the instant action, defendant was charged with assaulting a fellow inmate. The instant action went to trial. The other two cases were resolved by plea. The three cases were consolidated for the purpose of sentencing. Defendant remained in custody throughout the proceedings.

At the time sentence was imposed, the court awarded custody credits in the domestic violence and the inmate assault cases, but not in this case. Defendant contends the trial court erred in not awarding custody credits in this case and that some of the credits awarded in the domestic violence case should be reallocated to this case. He argues the court's failure to allocate any of the credits to this case resulted in a loss of 315 days of custody credits. We agree that custody credit should be awarded in this case and shall therefore reverse and remand.

### FACTS AND PROCEDURAL HISTORY[2]

*The Domestic Violence Case (No. SS030809A)*

In January 2003, defendant was charged with multiple counts of domestic violence, criminal contempt and disobeying a protective order in Monterey

---

[1] All further statutory references are to the Penal Code, unless otherwise stated.

[2] To aid our understanding of the facts and procedural history in this case, we shall take judicial notice of the record filed in defendant's appeal in case No. H028323, which arises out of his convictions in Monterey County Superior Court case Nos. SS030809A and SS041975A. We do so on our own motion. Defendant filed his appeal in case No. H028323 pursuant to *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071]. We affirmed the judgments of conviction in that case in an unpublished opinion filed on August 17, 2005.

County Superior Court. Defendant was taken into custody in the domestic violence action on January 17, 2003. In March 2003, he pleaded guilty to one count of inflicting corporal injury. The court suspended imposition of sentence and placed defendant on formal probation for five years. Conditions of probation included a county jail sentence, a domestic violence program, substance abuse counseling and a prohibition from possession of firearms. The remaining charges were dismissed. Defendant was in jail for the domestic violence action from January 17, 2003, until September 14, 2003.

### *The Auto Theft and Gun Case (No. SS033343A)*

On November 16, 2003, defendant was arrested in the instant action in Monterey County and charged with auto theft, assault on a police officer with a firearm, possession of a firearm by a felon, resisting arrest and related counts. The case went to trial in August 2004. The jury found defendant guilty of auto theft, possession of a firearm by a felon and misdemeanor resisting arrest. The jury was unable to reach a verdict in each of the remaining five counts and the court declared a mistrial as to those counts.

### *Revocation of Probation*

Following his arrest in the auto theft and gun action in November 2003, defendant's probation in the domestic violence action was summarily revoked. Defendant remained in custody.

### *The Inmate Assault Case (No. SS041975A)*

While in custody, defendant was charged with various counts in Monterey County for assaulting another inmate on June 17, 2004.

### *The Negotiated Disposition*

The parties appeared in court in all three actions on October 20, 2004. A disposition was reached.

The parties agreed that in addition to the jury findings in the auto theft and gun case, defendant would plead no contest to one count of battery with serious bodily injury in the inmate assault action and admit a probation

violation in the domestic violence case. The parties stipulated that defendant would be sentenced to the upper term of four years on the battery count, one year consecutive on the probation violation and eight months consecutive on each of the felony counts in the auto theft and gun case. The parties also agreed that defendant's maximum sentence would be six years four months for the entire package and that all unresolved charges and enhancements would be dismissed at the time of sentencing. There was no discussion or agreement regarding custody credits.

*Sentencing Hearing and Allocation of Custody Credits*

At the sentencing hearing on November 24, 2004, the court sentenced defendant to the upper term of four years in the inmate assault case, a consecutive term of one year in the domestic violence action and two consecutive eight-month terms in the auto theft and gun case, for a total sentence of six years four months. In calculating custody credits, the court divided defendant's periods of incarceration into three separate phases. The first period ran from January 17, 2003, until September 14, 2003 (the time served on the domestic violence case before the arrest in the auto theft and gun case). The second period ran from November 16, 2003 (the date of the arrest for the auto theft and gun charges), until June 16, 2004 (the day before the inmate assault). The third period ran from June 17, 2004 (the date of the inmate assault), until November 24, 2004 (the date of sentencing).

There does not appear to be any dispute regarding custody credits for the first or third periods of incarceration. The court allocated the first period of incarceration to the domestic violence case and gave defendant credit for 241 actual days served plus 120 good time/worktime days (hereafter conduct credits) for a total of 361 credits. The court allocated all custody credits for the third period to the inmate assault case.

The issue on appeal revolves around the court's allocation of the custody credits for defendant's second period of incarceration, set by the court at 213 actual days served plus 106 conduct credits for a total of 319 days. The court allocated those days to the domestic violence case. Thus, the total credits allocated to the domestic violence action were 680 days—361 days as a result of defendant's first period of incarceration and 319 days as a result of the second period of incarceration. The court did not award or allocate any credits to the auto theft and gun action.

The periods of incarceration and custody credits awarded are summarized in the following chart:

| Time Period No. | Dates incarcerated | Number of days served and "actual" credits given | Number of conduct credits | Total credits for time period | Action to which credits were allocated |
|---|---|---|---|---|---|
| 1 | 1/17/03 to 9/14/03 | 241 | 120 | 361 | Domestic violence |
| 2 | 11/16/03 to 6/16/04 | 213 | 106 | 319 | Domestic violence |
| 3 | 6/17/04 to 11/24/04 | 161 | 80 | 241 | Inmate assault |

At the time of sentencing, defendant argued that he was entitled to presentence credits in the auto theft and gun case for the second period of incarceration. When the court offered the parties an opportunity to brief the issue, defense counsel declined, responding that he would "make this part of [defendant's] notice of appeal."

DISCUSSION

*Contentions*

The instant appeal is taken solely from the judgment in the auto theft and gun case. Defendant contends the trial court erred when it failed to award custody credits for the second period to the auto theft and gun case, less the few days necessary to satisfy the entire domestic violence sentence. By assigning all of the custody credits to the domestic violence case (680 days), the number of credits allocated exceeded the sentence imposed in that case (one year or 365 days). More specifically, defendant contends he is entitled to 315 custody credits (210 days for actual time served plus 105 conduct credits) in this case, otherwise he "will have served 210 actual custody days as 'dead time' in violation of . . . section 2900.5 and *In re Marquez* (2003) 30 Cal.4th 14 [131 Cal.Rptr.2d 911, 65 P.3d 403]." Defendant seeks to reallocate 315 of the 319 custody credits that were awarded for the second period of incarceration from the domestic violence action to the auto theft and gun case.

The Attorney General, relying on section 2900.5, subdivision (b) and cases establishing the rule of "strict causation," responds that defendant is entitled to credit only if the auto theft and gun case was the sole reason for his presentence confinement.

*Analysis*

Section 2900.5 governs the award of presentence custody credits. It provides: "(a) In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, and including days credited to the period of confinement pursuant to Section 4019, shall be credited upon his or her term of imprisonment . . . . If the total number of days in custody exceeds the number of days of the term of imprisonment to be imposed, the entire term of imprisonment shall be deemed to have been served. . . . [¶] (b) For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

Section 2900.5's "application is clear when the conduct that led to the conviction and sentence was the sole cause of the custody to be credited. But difficult problems arise when, as often happens, the custody for which credit is sought had multiple, unrelated causes." (*People v. Bruner* (1995) 9 Cal.4th 1178, 1180 [40 Cal.Rptr.2d 534, 892 P.2d 1277] (*Bruner*).)

■ In this matter, defendant's custody can be attributed to "multiple, unrelated causes." His time in custody for the second period of time was attributable to *both* the domestic violence case and the auto theft and gun case. However, the prohibition in section 2900.5, subdivision (b) against duplicate credits would not be violated by awarding credits as defendant contends because he does not seek duplicate credits for the second period of confinement.

The most recent and relevant California Supreme Court case on this subject is *In re Marquez* (2003) 30 Cal.4th 14 [131 Cal.Rptr.2d 911, 65 P.3d 403]. The defendant in *Marquez* was arrested in Monterey County for burglary and was released on bail. While on bail, the defendant was arrested in Santa Cruz County for an unrelated burglary, and Monterey placed a hold on him. He was convicted in the Santa Cruz case and given credit against his sentence for the time he spent in jail from the date of his Santa Cruz County arrest (July 23, 1991) until the date he was sentenced in the Santa Cruz case (December 11, 1991). The defendant was then returned to the Monterey County jail and convicted. He was sentenced on April 2, 1992. The Monterey court did not give him credit for the time he spent in custody between the day he was sentenced in the Santa Cruz case and the day he was sentenced in the Monterey case. Later, the defendant's conviction in the Santa Cruz case was

reversed on appeal and the Santa Cruz charges were dismissed. The defendant then sought credit in the Monterey case for the time he spent in custody after he was sentenced in the Santa Cruz case and before he was sentenced in Monterey County. The Supreme Court concluded that he was entitled to the credits.

The court reasoned that when Monterey placed a hold on the defendant subsequent to his arrest in the Santa Cruz case, his custody became attributable to the pending criminal charges in two counties: Monterey and Santa Cruz. (*In re Marquez, supra*, 30 Cal.4th at p. 20.) Had Santa Cruz dropped its charges at that time, the subsequent custody would have been attributable solely to the Monterey hold. (*Ibid.*) The court held that once Santa Cruz dismissed its charges, all custody following Monterey's hold, including the period between the defendant's sentencing in Santa Cruz and his sentencing in Monterey, became attributable to the Monterey case. (*Id.* at p. 20.)

In the case before us, defendant's assertions regarding "dead time" are based on the following language from *Marquez*: "To deny petitioner credit for his time spent in custody between December 11, 1991, and April 2, 1992, would render this period 'dead time,' that is, time spent in custody for which he receives no benefit. Sometimes this result is unavoidable. For example, had petitioner's Santa Cruz County *presentence* custody been attributable solely to the Santa Cruz County charges (that is, had Monterey County never placed a hold), dismissal of the Santa Cruz County charges would have left petitioner with no sentence against which credit for that period could be applied. But because his custody after placement of the Monterey County hold was attributable to both his Santa Cruz *and* Monterey County cases, dismissal of the Santa Cruz County charges still left him with the Monterey County sentence against which credit for all of his custody from placement of the Monterey County hold until imposition of sentence could be applied." (*In re Marquez, supra*, 30 Cal.4th at pp. 20–21.)

The respondent in *Marquez* argued that application of the rule of "strict causation" precluded an award of additional credits in that case. The court disagreed and explained: "This argument is misplaced. The requirement of 'strict causation,' on which this court relied in *Bruner, supra*, 9 Cal.4th 1178, and [*In re Joyner* (1989)] 48 Cal.3d 487 [256 Cal.Rptr. 785, 769 P.2d 967], is applicable in cases involving the possibility of *duplicate credit* that might create a windfall for the defendant. Here, because the Santa Cruz County charges have been dismissed, no possibility of a windfall (in the form of double credit) to petitioner exists. Unlike in *Bruner* and *Joyner*, the choice is not between awarding credit once or awarding it twice. The choice is instead between granting petitioner credit *once* for his time in custody between December 11, 1991, and April 2, 1992, or granting him *no credit at all* for this period of local custody." (*In re Marquez, supra*, 30 Cal.4th at p. 23.)

None of the cases cited by the Attorney General assist us in our analysis because, unlike this case and unlike *Marquez*, they all involve duplicate credits. In *People v. Shabazz* (2003) 107 Cal.App.4th 1255 [132 Cal.Rptr.2d 708], *In re Nickles* (1991) 231 Cal.App.3d 415 [282 Cal.Rptr. 411], and *People v. Cooksey* (2002) 95 Cal.App.4th 1407 [116 Cal.Rptr.2d 1], the defendants were required to comply with the "strict causation" rule since they each sought duplicate credits. Under *Marquez*, this rule is not applicable where duplicate credits are not sought.

■ Based on the above, we conclude that the rule of strict causation does not apply in this case. As in *Marquez*, the choice in this case is not between awarding credit once or awarding it twice. The credits for the second period of incarceration were only awarded against a single case, the domestic violence case. However, once the few days of custody left to complete the sentence in the domestic violence action were credited to defendant, the remaining custodial time should have been characterized as solely attributable to the auto theft and gun case and allocated accordingly. Otherwise the vast majority of the time served during the second period of incarceration would become "dead time" that was not attributable to any case, in contravention of *Marquez*.

For these reasons, we conclude the trial court erred when it failed to award defendant any custody credits in the auto theft and gun case.

### Comment Regarding Procedure

We conclude with a comment about the manner in which this issue was handled by counsel in the trial court. Defense counsel objected to the credit allocation indicated by the sentencing judge. However, he did not suggest how the credits should be allocated to the auto theft and gun case or cite any legal authority. The judge did not dismiss the argument and suggested the parties brief the issue. Defense counsel responded simply that he would include the issue in his notice of appeal.

In our view, this is an issue that should have been addressed by counsel in the trial court before the appeal was filed. The sentencing judge never had an opportunity to evaluate the arguments the parties presented on appeal. Counsel should accept the court's invitation to brief a credit issue in the future, rather than rely on the costly and time-consuming appellate process to resolve the issue.

## DISPOSITION

The judgment is reversed and remanded to the trial court. The trial court is directed to prepare and file an amended abstract of judgment crediting the November 2003 to June 2004 period in custody, less the few days necessary to satisfy the one-year domestic violence sentence, against defendant's 16-month sentence in this case. The court is directed to send a certified copy of the amended abstract of judgment to the Department of Corrections.

Rushing, P. J., and Mihara, J., concurred.