Filed 12/3/20  P. v. Vidor CA1/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MATTHEW JAMES VIDOR,<br><br>    Defendant and Appellant. | A156690<br><br>(Sonoma County<br>Super. Ct. No. CR668037) |

Appellant Matthew James Vidor was convicted by plea of carjacking, recklessly fleeing a police vehicle, and elder abuse.  After his probation was terminated as unsuccessful, the trial court sentenced appellant to a term of 10 years eight months in prison, with credit for certain pretrial custody.  On appeal, he challenges the court's denial of 251 days of custody credits for time he spent in jail on an unrelated case in a different jurisdiction after he violated probation in this case.  While the appeal was pending, appellant requested that we consider whether his conviction should be conditionally reversed and the matter remanded to the trial court for a determination of his eligibility for pretrial mental health diversion under Penal Code[1] section 1001.36 and *People v. Frahs* (2020) 9 Cal.5th 618.  The Attorney General agrees that appellant meets the threshold requirements for conditional

---

[1] All undesignated statutory references are to the Penal Code.

1

reversal.  We affirm the trial court's sentencing order and conditionally reverse and grant a limited remand for the purpose of determining appellant's eligibility for mental health diversion under section 1001.36.

## FACTUAL AND PROCEDURAL BACKGROUND

In July 2015, appellant was charged in Sonoma County with carjacking (Pen. Code, § 215, subd. (a)), count 1; fleeing a pursuing police vehicle while driving recklessly (Veh. Code, § 2800.2), count 2; and elder abuse (§ 368, subd. (b)(1)), count 3.  The complaint further alleged that count one was a serious and violent felony pursuant to section 667.9, subdivision (a) because the victim was elderly.  Four months earlier, the appellant had been sentenced by the San Francisco County Superior Court to serve 36 months of formal probation and 72 days in jail for vehicle theft (Veh. Code, § 10851, subd. (a)) and attempted carjacking (§§ 664/215, subd (a).)  (*People v. Vidor* (Super. Ct. SF City and County, 2015, No. 223642.)  Criminal proceedings in the underlying case were suspended from August 5, 2015 to December 11, 2015, while appellant was restored to competency.  He ultimately entered an open plea to all charges in March 2016.

On July 19, 2016, the trial court imposed and suspended a sentence of 10 years eight months, and placed appellant on formal probation for four years on the condition that he serve one year in county jail and enter the Jericho Project drug and alcohol treatment program (Jericho).  The court awarded 349 days actual credit plus 348 days conduct credit plus 35 hospital days for a total of 732 presentence custody credits.

On August 28, 2016, nine days after his admission, appellant was discharged from Jericho, reportedly due to his negative attitude and behavior and his failure to respond adequately to treatment.  He did not contact the probation department and report his discharge, even though he had been

2

instructed to do so.  On September 2, 2016, the Sonoma County trial court summarily revoked appellant's probation and issued a warrant for his arrest.

On April 25, 2017, a hearing was held on a request to clear appellant's warrant from Sonoma County.  The trial court was informed by appellant's counsel that 23 days after he was discharged from Jericho, appellant was taken into custody in San Francisco on an arrest warrant that had issued after he failed to report to the San Francisco probation department.  From the reporter's transcript of that hearing, it appears that neither the trial court nor the Sonoma County probation department had previously been informed of appellant's arrest.  The court declined counsel's request to clear the warrant and ordered appellant returned to Sonoma County.  After serving 251 days in custody in San Francisco County jail, appellant was returned to Sonoma County on May 30, 2017.  Appellant admitted his probation violation on July 17, 2017.

On September 19, 2017, the trial court below terminated appellant's probation as unsuccessful and executed the previously imposed sentence of 10 years eight months.  The court awarded 493 days of credit for time served, which consisted of 349 days he previously accrued before being placed on probation in this matter, 31 days accrued while awaiting placement in Jericho, and 113 days in Sonoma County jail following his transfer from San Francisco.  Appellant was also awarded 74 days of conduct credit pursuant to section 2933.1, subdivision (c), and 35 hospital days he had previously accrued for a total of 602 days of credit.  Appellant filed a notice of appeal.

In August 2018, appellant's appellate counsel sent a letter to the trial court requesting that appellant be credited for the 251 days he spent in jail in San Francisco prior to his detention in Sonoma County.  Counsel represented that appellant had been in custody in San Francisco "due to a Sonoma

3

County hold," relying on the reporter's transcript of the April 25, 2017 hearing.

On September 27, 2018, we issued our opinion in *People v. Vidor* (Sept. 27, 2018, A152527 [nonpub. opn.]) (*Vidor I*). We remanded the case to the trial court to consider appellant's custody credits, noting it was unclear what had triggered the reduction in conduct credits from the original sentence in July 2016 and the sentence imposed in September 2017. (*Vidor I, supra*, A152527.) As both sides here acknowledge, however, the trial court correctly reduced appellant's conduct credits from 349 to 74 days when his prison sentence was reinstated in September 2017. We accept appellant's concession on this point. Because appellant was sentenced to state prison for carjacking in violation of section 215, subdivision (a)—a violent felony listed in section 667.5, subdivision (c)(17)—his presentence conduct credits are limited under section 2933.1, subdivision (c) to 15 percent. (See *People v. Arevalo* (2018) 20 Cal.App.5th 821, 827–830; *People v. Daniels* (2003) 106 Cal.App.4th 736, 739–741; § 4019.)

Following our remand, the trial court held a hearing on December 11, 2018 in which appellate counsel's August 2018 letter and request for additional presentence credits was discussed. Because trial counsel did not have any pertinent documentation to support the request, the court put the matter over to February 2019 to allow additional time for trial counsel to consult with appellate counsel and provide evidence as to the status of the San Francisco case. At the February 15, 2019 hearing, trial counsel appeared without any documentation concerning the San Francisco matter. The trial court denied counsel's request for 251 days of additional presentence credits, finding that appellant's arrest in San Francisco was not based on the Sonoma County warrant and no evidence was provided that appellant's custody in San Francisco was "dead time." This appeal followed.

4

There is no dispute that appellant's September 2016 arrest in San Francisco was not based on the September 2016 Sonoma County arrest warrant. Nor do the parties dispute that he remained in custody in San Francisco for 251 days before being returned to Sonoma County. The question raised by this claim is whether appellant should receive presentence credit for the 251 days he served in San Francisco County jail. Because the facts regarding appellant's actual time in custody are undisputed, his claim presents solely a question of law. Accordingly, we apply the de novo standard of review. (See *Ghirardo v. Antonioli* (1994) 8 Cal.4th 791, 799; *People v. Bravo* (1990) 219 Cal.App.3d 729, 732.) Below we address appellant's request for conditional reversal and remand under section 1001.36.

## A.  *Applicable Legal Principles*

Section 2900.5, subdivision (a) provides, in pertinent part: "In all felony and misdemeanor convictions, either by plea or by verdict, when the defendant has been in custody, . . . all days of custody of the defendant, including days served as a condition of probation in compliance with a court order, . . . shall be credited upon his or her term of imprisonment . . . ." However, subdivision (b) of section 2900.5 specifies that "credit shall be given *only* where the custody to be credited is attributable to proceedings related to the *same conduct* for which the defendant has been convicted." (§ 2900.5, subd. (b), italics added.)

As our Supreme Court explains, presentence custody stemming from unrelated incidents may not be credited against a subsequent incarceration if the charged conduct was not a cause of the earlier restraint. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1183 (*Bruner*).) The *Bruner* court held that "where a period of presentence custody stems from multiple, unrelated incidents of misconduct, such custody may not be credited against a

5

subsequent formal term of incarceration if the prisoner has not shown that the conduct which underlies the term to be credited was also a 'but for' cause of the earlier restraint." (*Id.* at pp. 1193–1194.)  The court reasoned that "[s]ection 2900.5 is not intended to bestow the windfall of duplicative credits against all terms or sentences that are separately imposed in multiple proceedings." (*Id.* at p. 1191.)

The Supreme Court later recognized an exception to *Bruner's* strict causation rule in *In re Marquez* (2003) 30 Cal.4th 14 (*Marquez*).  The defendant in *Marquez* was released on bail on a charge of burglary in Monterey County when he was arrested and charged in Santa Cruz County for an unrelated matter.  During his detention, Monterey County placed a hold on his custody status.  (*Id.* at p. 17.)  After the defendant was convicted in both counties, he received presentence credit for time spent in jail in each county prior to sentencing.  (*Id.* at p. 18.)  The Santa Cruz County charges were later dismissed after that conviction was reversed on appeal.  The defendant sought unsuccessfully to be awarded credit against his Monterey County sentence for time he spent in custody between the day he was sentenced in the Santa Cruz County case and the day he was sentenced in the Monterey County case.  (*Ibid.*)

The Supreme Court reversed.  It found that once Monterey County placed its hold on the defendant, "his custody was attributable to the charges in *both* counties." (*Marquez, supra,* 30 Cal.4th at p. 20.)  Thus, once the charges were dismissed in Santa Cruz County, "all custody following Monterey County's hold, including the period between petitioner's sentencing in Santa Cruz County and his Monterey County sentencing, is properly characterized as 'attributable to [the Monterey County] proceedings related to the same conduct for which the defendant has been convicted.' " (*Ibid.*, quoting § 2900.5, subd. (b).)  The court rejected the People's argument that

6

the strict causation rule precluded this result, holding that the rule "is applicable in cases involving the possibility of *duplicate credit* that might create a windfall for the defendant." (*Marquez*, at p. 23.) There was no possibility of a duplicate custody credit award in *Marquez* because the Santa Cruz charges had been dismissed. (*Ibid.*)

## B.     *Appellant Is Not Entitled to Additional Presentence Credits*

Appellant argues that he is entitled to credit against his Sonoma County sentence for the 251 days of "dead time" he spent in custody in San Francisco. "[W]here a defendant's presentence custody arises from conduct which is only partially attributable to the conduct for which he was convicted and sentenced, he has the burden of proving entitlement to credit therefor." (*In re Nickles* (1991) 231 Cal.App.3d 415, 417.) As we explain, appellant has not met his burden of establishing any entitlement to such credit.

Appellant does not dispute that his arrest in San Francisco was unrelated to the Sonoma County arrest warrant. Nor can he, as the evidence is uncontested that the Sonoma County trial court and probation department were unaware of his detention until the April 25, 2017 hearing— approximately 217 days after his arrest. Appellant nevertheless argues that his custody is attributable to the Sonoma County proceedings because his public defenders in San Francisco spent some time trying to understand why he was rejected by Jericho and to find a better residential treatment placement for him. We fail to see how these circumstances make his custody attributable to the Sonoma County proceedings. There is no evidence that Sonoma County placed a custody hold on appellant while he was detained in San Francisco. Rather, appellant was arrested and jailed in San Francisco for violating the terms of his probation in his unrelated San Francisco case. But for his failure to comply with the terms of his probation in the San Francisco case, he would not have been in custody in San Francisco. Because

7

the Sonoma County offenses were not the cause of his 251-day incarceration in San Francisco, he is not entitled to credit for those days in this case. (§ 2900.5, subd. (b); *Bruner*, *supra*, 9 Cal.4th at pp. 1193–1194.)

Appellant's claim suffers from a second defect: no evidence has been presented that his San Francisco case was dismissed. Thus, the possibility remains on this record that an award of presentence credit in these proceedings may be duplicative of presentence credits awarded in the San Francisco case, a situation barred under section 2900.5, subdivision (b). It was appellant's burden to demonstrate otherwise, and he failed to do so.

Appellant argues that he was placed on felony probation in the San Francisco case in March 2015 and that a warrant had issued for his arrest after he failed to report to the probation department. A minute order reflects that on July 5, 2018, the San Francisco Superior Court recalled the bench warrant that had been issued on May 31, 2017 and terminated probation as unsuccessful. From this minute order, appellant contends that "the San Francisco case was dropped" and therefore appellant's 251 days in custody constitutes "dead time" that should be credited against his Sonoma County sentence. No evidence supports the claim. While the record on appeal includes a copy of the San Francisco Superior Court's minutes of the hearing in which appellant's probation was terminated as unsuccessful, there is no reporter's transcript. Apart from this single minute order, the record does not include any other documentation of the San Francisco case.

There is some indication that appellant's San Francisco case was not, in fact, dismissed. At the February 15, 2019 hearing, appellant's trial counsel stated his "understanding" that appellant was "sentenced . . . on the San Francisco case before they sent him back here" but gave no explanation as to what sentence he received or what credits, if any, he was awarded. The trial court observed that it had afforded appellant three months to present

8

proof that his custody in San Francisco was attributable to the Sonoma County proceedings or that his San Francisco case had been dismissed. The trial court stated: "[I]f someone is going to get the credits that you are saying they are entitled to [him], you need to show me he's entitled to them. . . . [I]t is all speculative. And I don't have any information about San Francisco." Appellant has provided no evidence that his 251 days in custody in San Francisco was "dead time" and has not demonstrated eligibility for additional presentence credits.

Appellant's reliance on *Marquez* and *People v. Gonzalez* (2006) 138 Cal.App.4th 246 (*Gonzalez*) is misplaced. As discussed above, the *Marquez* court concluded that the defendant was entitled to presentence credits against his Monterey County sentence because of Monterey County's custody hold and because there was no possibility that the defendant could be awarded duplicate credits once the Santa Cruz charges had been dismissed. (*Marquez, supra*, 30 Cal.4th at pp. 20, 23.) Neither of those factors appear in this record. Thus, the possibility remains that an award of additional presentence credits in this matter would bestow a windfall of duplicative credits against appellant's sentences in both the Sonoma County and San Francisco proceedings.

In *Gonzalez,* the defendant pleaded guilty to domestic violence and was placed on five years' formal probation. (*Gonzalez, supra,* 138 Cal.App.4th at pp. 248–249.) During the probationary period, he was charged with auto theft and gun possession. (*Id.* at p. 249.) While in custody awaiting trial on the auto theft and gun charges, he was charged with assaulting another inmate. (*Ibid.*) The defendant was convicted of the auto theft and gun charges, pleaded no contest in the assault case, and admitted the probation violation. (*Id.* at pp. 249–250.) In awarding presentence credit, the trial court calculated the time served from the date of the defendant's arrest in the

9

auto theft and gun case to the date of the assault, and allocated that credit to the domestic violence case, which was nearing completion. (*Id.* at p. 250.) The credit in the domestic violence case exceeded the sentence imposed in that case, leaving a certain amount of "dead time" credit. (*Id.* at p. 251.)

The defendant argued, and the Court of Appeal agreed, that the credit could be applied to the auto theft and gun case even though it was not the sole reason for the presentence confinement. The court held that the custody could be attributed to " 'multiple, unrelated causes.' " (*Gonzalez, supra,* 138 Cal.App.4th at p. 252.) It reasoned that the prohibition in section 2900.5, subdivision (b) against duplicate credit would not be violated because the defendant did not seek duplicate credit for the period of confinement. (*Gonzalez,* at p. 252.)

*Gonzalez* is inapposite because appellant has not negated the possibility that the 251 days he spent in custody in San Francisco will be (or already has been) applied to his San Francisco County case. Because he has not provided this court with sufficient proof to discount any risk of a "credit windfall" (*Bruner, supra,* 9 Cal.4th at p. 1193), we conclude he has failed to demonstrate his entitlement to the 251 days of custody credit in this case.

## C.    *Appellant Is Entitled to a Hearing on His Eligibility for Pretrial Mental Health Diversion*

After this appeal was fully briefed, we granted appellant's requests to file a supplemental brief and motion requesting that we remand this matter to the trial court for a mental health pretrial diversion eligibility hearing under section 1001.36 and the Supreme Court's recently issued opinion in *Frahs*, *supra*, 9 Cal.5th 618. The Attorney General does not oppose this request. We agree that a conditional remand is appropriate.

Effective June 27, 2018, "the Legislature enacted sections 1001.35 and 1001.36 as part of Assembly Bill No. 1810 (2017-2018 Reg. Sess.) . . . .

10

[Citation.] Section 1001.36 gives trial courts the discretion to grant pretrial diversion for individuals suffering from certain mental health disorders. (§ 1001.36, subd. (a).)" (*Frahs, supra,* 9 Cal.5th at p. 626.) "The stated purpose of the diversion statute 'is to promote all of the following: [¶] (a) Increased diversion of individuals with mental disorders to mitigate the individuals' entry and reentry into the criminal justice system while protecting public safety. [¶] (b) Allowing local discretion and flexibility for counties in the development and implementation of diversion for individuals with mental disorders across a continuum of care settings. [¶] (c) Providing diversion that meets the unique mental health treatment and support needs of individuals with mental disorders.' (§ 1001.35, subds. (a)-(c).)" (*Frahs,* at p. 626.)

Section 1001.36 defines "pretrial diversion" as "the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment." (§ 1001.36, subd. (c).) If a defendant is charged with a qualifying offense,[2] a trial court may grant pretrial diversion if it finds all of the following: (a) the defendant suffers from a qualifying mental disorder; (b) the mental disorder was a significant factor in the commission of the charged offense; (c) in the opinion of a qualified mental health expert, the defendant's symptoms will respond to mental health treatment; (d) the defendant consents to diversion and waives his or her right to a speedy trial; (e) the defendant agrees to comply with treatment as a condition of diversion; and (f) the defendant will not pose an

---

[2] A defendant may not be placed into a diversion program for the charged offenses of murder, manslaughter, use of a weapon of mass destruction, or certain enumerated sex offenses. (§ 1001.36, subd. (b)(2).)

11

unreasonable risk of danger to public safety if treated in the community. (*Id.,* subd. (b)(1)(A)-(F).)

If the six criteria in section 1001.36, subdivision (b)(1), are met, and if the trial court "is satisfied that the recommended inpatient or outpatient program of mental health treatment will meet the specialized mental health treatment needs of the defendant" (§ 1001.36., subd. (c)(1)(A)), the court may order diversion into an approved mental health treatment program for up to two years. (*Id.,* subds. (c)(1) & (c)(3).) If the defendant commits an additional offense or otherwise performs unsatisfactorily in the diversion program, the court may reinstate the criminal proceedings. (*Id.,* subd. (d).) "If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion," and "the arrest upon which the diversion was based shall be deemed never to have occurred." (*Id.,* subd. (e).)

In *Frahs, supra,* 9 Cal.5th 618, the Supreme Court held that section 1001.36 "applies retroactively to cases in which the judgment is not yet final" (*id.* at p. 624) because section 1001.36 mitigates the possible punishment for a specific class of offenders with certain enumerated mental health conditions, and there is no clear contraindication of legislative intent for retroactive application. (*Id.* at pp. 630–637; see *In re Estrada* (1965) 63 Cal.2d 740, 742–748 [an amendatory statute lessening punishment for a crime is presumptively retroactive, absent clear legislative intent for prospective application, and applies to all defendants whose judgments are not final at the time the statute becomes effective].)

While appellant was originally sentenced in September 2017 — before the enactment of section 1001.36—the judgment was not yet final because his earlier appeal was pending before this court at the time the ameliorative

12

legislation went into effect.  As the Supreme Court recently explained in *People v. McKenzie* (2020) 9 Cal.5th 40, 46, "[i]n criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence."  Thus, in the context of *Estrada* retroactivity of an ameliorative statute, the relevant inquiry is whether the " ' "criminal *proceeding* . . .  ha[s] not yet  reached final disposition in the highest court authorized to review it." ' "  (*McKenzie*, at p.  45 (italics added).)  Since this matter has not been reduced to final judgment, appellant is entitled to the ameliorative provisions of section 1001.36.[3]

Turning to the merits, the parties agree that appellant has made a prima facie showing of eligibility for diversion under section 1001.36 by offering evidence of a qualifying mental disorder.  We agree.  As noted above, the trial court initially suspended criminal proceedings for four months over concerns that appellant was incompetent to stand trial.  A psychiatrist was appointed to conduct a formal mental health evaluation.  The psychiatrist found appellant incompetent, stating that he had a history of polysubstance abuse and may have major underlying mental health issues.  The psychiatrist also noted that appellant was becoming increasingly delusional around the time of the offenses and was developing a fascination with taking cars.  The record here affirmatively demonstrates that appellant appears to

---

[3] Appellant has asked us to recall the remittitur issued on November 30, 2018 in his prior appeal (*Vidor I*, *supra*, A152527) in order to effectuate the conditional remand under section 1001.36.  As we explain above, it is unnecessary for us to do so.  While we had previously affirmed the conviction and remanded on a question of sentencing, our remittitur did not render his conviction "final" as separate from his sentence.  The pendency of this appeal on a matter concerning his sentence makes this proceeding nonfinal for purposes of remand.

suffer from a qualifying mental disorder and that his underlying conviction may have been a consequence of that disorder. A conditional remand under *Frahs* is thus appropriate.

## DISPOSITION

The trial court's sentencing order is affirmed. We conditionally reverse appellant's convictions and sentence and direct the trial court to conduct a hearing on appellant's eligibility for mental health diversion under section 1001.36. If the court determines that appellant qualifies for pretrial mental health diversion, then it may grant diversion. If appellant successfully completes diversion, then the court shall dismiss the charges. If the court determines that appellant is ineligible for diversion or declines to exercise its discretion to grant diversion, or if appellant does not successfully complete diversion, the trial court shall reinstate the convictions and reimpose his prior sentence.

_____

Sanchez, J.

WE CONCUR:


_____

Margulies, Acting P. J.


_____

Banke, J.