Filed 12/28/22  P. v. Snell CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Butte)

----

|  |  |
|---|---|
| THE PEOPLE, | C095676 |
| Plaintiff and Respondent, | (Super. Ct. No. 20CF06233) |
| v. | |
| FLOYD LEE SNELL, JR., | |
| Defendant and Appellant. | |

Defendant Floyd Lee Snell, Jr., pleaded no contest to a violation of Penal Code section 21310, carrying a concealed dirk or dagger.[1]  The trial court sentenced defendant to the upper term of three years.  Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731, § 1.3) (Senate Bill 567), effective January 1, 2022, amended section 1170, subdivision (b)(1)-(2) to make the middle term the presumptive term.  Defendant contends, and the People concede, Senate Bill 567 requires remand for resentencing.  We

---

[1]  Undesignated statutory references are to the Penal Code.

1

agree and will vacate defendant's sentence and remand to the trial court to impose sentence in compliance with section 1170, subdivision (b). On remand, the trial court may address defendant's other contention on appeal regarding the allocation of custody credits.

FACTUAL AND PROCEDURAL BACKGROUND

The details of defendant's offense are not pertinent to this appeal. In sum, on December 9, 2020, a police officer dispatched on a report of vandalism at a 7-Eleven observed defendant sleeping in a car with the motor running and two wine bottles beside him on the front seat. After defendant identified himself, a records check revealed that he was on postrelease community supervision (PRCS) and subject to search.[2] Officers found a silver knife with a nine-inch fixed blade concealed under defendant's sweatshirt.

Defendant was charged with carrying a concealed dirk or dagger (§ 21310; count 1), possession of a stun gun by a person with a felony conviction (§ 22610, subd. (a); count 2), and possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a); count 3). It was further alleged that defendant had a prior strike conviction. (§§ 667, subd. (d), 1170.12, subd. (b).)

On November 18, 2021, defendant pleaded no contest to count 1, with the remainder of the charges dismissed, including the strike, and admitted a violation of

---

[2] Defendant was released on PRCS on August 5, 2020. "PRCS is an alternative supervision system, distinct from parole." (*People v. Steward* (2018) 20 Cal.App.5th 407, 418.) " '[A] person released from prison is subject to a period of either parole (§ 3000 et seq.) or postrelease community supervision (§ 3450 et seq.). [Citation.] Parole applies to high-level offenders, i.e., third strikers, high-risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes. (§ 3451, subd. (b).) All other released persons are placed on postrelease community supervision. (§ 3451, subd. (a).)' [Citation.]" (*Id.* at p. 417.) Every person on PRCS is subject to search. (§ 3465.)

PRCS in a separate case.[3]  Counsel for the parties agreed that "the Court can take a factual basis [for the plea] from the Probation report."

On February 3, 2022, the trial court conducted a sentencing hearing, which the court prefaced with the statement that its intended ruling was to impose the upper term of three years.  Defense counsel argued the court was bound to impose the middle term under section 1170, subdivision (b)(2).  The prosecutor countered that the court should impose the upper term, noting that "Section 1170(b)(3) allows this Court to take into consideration the Defendant's criminal history," consisting of seven felonies and 11 misdemeanors going back to the 1980s.  The prosecutor also argued that defendant in pleading no contest had "stipulated to the facts that were in the Probation report . . . [and] the Court can use those facts if they have been stipulated to [*sic*] to find additional factors in aggravation, should it choose.  However, the People believe that based on the Defendant's prior criminal history alone, that is sufficient for the Court to impose the upper term."

After denying probation, the trial court ruled on defendant's sentence.  "In reviewing the California Rules of Court 4.421 and 4.423, as well as Penal Code Section 1170, the Court finds that the aggravating circumstances outweigh the mitigating circumstances.  Specifically, the Court notes Penal Code Section 1170(b)(3) allows this Court to consider the Defendant's prior convictions in determining sentencing based on the certified copy of the record of conviction without submitting the prior convictions to a jury.

"That exception in 1170(b)(3) also allows the Court to consider that the Defendant's convictions are of increasing seriousness in nature and their prior performance on probation.  Also, that the Defendant . . . was on probation or parole at the

---

[3]  The separate case, case No. 20-PCS-06268 is not part of this appeal.

time of the commission of the present offense. In the Court's view, the Court can consider these record-relating aggravating factors based on the decisions of [*People v. Black* (2007) 41 Cal.4th 799] and [*People v. Yim* (2007) 152 Cal.App.4th 366].

"In aggravation, the Court specifically notes the Defendant's prior convictions as an adult are numerous and of increasing seriousness in nature. The Defendant served a prior prison term. The Defendant was on PRCS at the time of this offense. The Defendant's prior performance on probation, parole, and Post Release Supervision was unsatisfactory."

After noting defendant's longstanding drug addiction as a mitigating factor, the court sentenced defendant to the upper term of three years on count 1, section 21310. The court also sentenced defendant in a separate case from Stanislaus County to eight months consecutive (one-third of the middle term) for violation of Health and Safety Code section 11378. The court terminated defendant's PRCS in his other pending case, and ordered defendant to serve 180 days in county jail.

Defendant filed a timely appeal.

## DISCUSSION

## I

### *Penal Code section 1170, subdivision (b)*

Defendant contends that the sentencing court prejudicially erred in relying on the probation report as a basis for considering defendant's criminal history in sentencing, rather than certified records as required by section 1170, subdivision (b)(3). The People agree that the trial court's imposition of the upper term on count 1 failed to comply with the amended version of section 1170, subdivision (b), and the error was not harmless. We agree with the parties that defendant is entitled a new sentencing hearing in compliance with section 1170, subdivision (b). This conclusion requires that we examine both defendant's rights under the Sixth Amendment to the United States Constitution and under section 1170, subdivision (b).

4

In *Cunningham v. California* (2007) 549 U.S. 270, the United States Supreme Court explained that the Sixth Amendment to the federal Constitution "proscribes a sentencing scheme that allows a judge to impose a sentence above the statutory maximum based on a fact, other than a prior conviction, not found by a jury or admitted by the defendant." (*Cunningham*, at pp. 274-275.) The court held that the middle term was the statutory maximum prescribed by California's determinate sentencing law. (*Id.* at p. 288.) Subsequently, in *People v. Black, supra*, 41 Cal.4th at page 816, the California Supreme Court held in relevant part that imposition of the upper term does not violate a defendant's Sixth Amendment jury trial right "so long as one legally sufficient aggravating circumstance has been found to exist by the jury," or has been "admitted by the defendant." In a companion case, *People v. Sandoval* (2007) 41 Cal.4th 825, the high court held that erroneous imposition of an upper term is subject to federal harmless error analysis under *Chapman v. California* (1967) 386 U.S. 18.

Senate Bill 567, which became effective just over one month before defendant's sentencing, amended section 1170, subdivision (b) to provide that a trial court may impose an upper term sentence only where there are aggravating circumstances that justify imposition of a term exceeding the middle term and the defendant has either stipulated to the facts underlying those circumstances or those facts have been found true beyond a reasonable doubt. (§ 1170, subd. (b)(1)-(2).) However, the "court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior conviction to a jury." (§ 1170, subd. (b)(3).)

Applying these principles, we find that defendant's Sixth Amendment right to a jury trial on the aggravating circumstances was not violated. However, we cannot say the same for section 1170, subdivision (b) as amended by Senate Bill 567. (See, e.g., *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109-1111.)

We begin with the Sixth Amendment.  Here, there are two circumstances in aggravation that the trial court properly considered.  First, as defendant acknowledges, he admitted that he was on PRCS at the time he committed the instant crime (Cal. Rules of Court, rule 4.421(b)(4)).[4]

Second, the trial court considered that defendant's prior convictions were numerous or of increasing seriousness (rule 4.421(b)(2)).  In *People v. Black*, the court said that under *Cunningham v. California* the "imposition of the upper term does not infringe upon the defendant's constitutional right to a jury so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or *is justified based upon the defendant's record of prior convictions*." (*People v. Black, supra*, 41 Cal.4th at p. 816, italics added.)  The court observed that "[t]he United States Supreme Court consistently has stated that the right to a jury trial does not apply to the fact of a prior conviction.  [Citations.]" (*Id.* at p. 818; see also *Apprendi v. New Jersey* (2000) 530 U.S. 466, 490 ["Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt"].)

Here, the probation report reflected defendant's extensive criminal history beginning in 1986 and continuing to 2021 with multiple misdemeanor and felony convictions.  As in *People v. Black*, under the United States Supreme Court's and California Supreme Court's Sixth Amendment jurisprudence, "defendant's criminal history . . . rendered defendant eligible for the upper term sentence." (*People v. Black, supra*, 41 Cal.4th at p. 818; see also *In re Richardson* (2011) 196 Cal.App.4th 647, 659.)

Section 1170, subdivision (b), however, is a different story.  Section 1170, subdivision (b)(3) requires proof of a prior conviction by a certified record.  No certified

---

[4]  All rule references are to the California Rules of Court.

records were presented to the trial court.  Rather, the court relied on the probation report, which attached a summary of defendant's criminal record.  (*People v. Zabelle, supra*, 80 Cal.App.5th at p. 1114.)  A probation report is not a certified record of conviction.  (*People v. Dunn* (2022) 81 Cal.App.5th 394, 401, 403, review granted Oct. 12, 2022, S275655; *Zabelle*, at p. 1114; see also Evid. Code, § 452.5, subd. (b)(1).)

Nonetheless, the trial court, while plainly familiar with the language of section 1170, subdivision (b)(3), treated the probation report as sufficient to "consider that the Defendant's convictions are of increasing seriousness in nature and their prior performance on probation," citing *People v. Black.*  However, the court in *People v. Black* was concerned only with the Sixth Amendment in noting that the probation report showed the defendant's convictions progressing from misdemeanors to felonies.  (*People v. Black, supra*, 41 Cal.4th at p. 818; see also *People v. Yim* (2007)152 Cal.App.4th 366, 370-371 [under *Cunningham* exception for prior convictions, a defendant's parolee status when crime was committed and prior unsatisfactory performance on parole can be determined by reference to " 'court records' "].)  The trial court thus failed to acknowledge the critical distinction between the Sixth Amendment and section 1170, subdivision (b).

In sum, only defendant's admission that he was on PRCS at the time he committed the offense for which he was sentenced was permissibly considered by the trial court under section 1170, subdivision (b).  Put another way, three out of the four aggravating factors the trial court relied on were not permissibly considered.

"When a trial court has abused its discretion in choosing among available sentencing options, such as by relying on an improper sentencing factor, a reviewing court must still affirm unless 'the error complained of has resulted in a miscarriage of justice.'  (Cal. Const., art. VI, § 13.)  In these situations, the trial court has revealed which sentencing choice it prefers, and the reviewing court must decide whether there is a reasonable probability that the trial court's lawful exercise of discretion on remand will

7

lead it to make a different choice." (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 426.)

This requires application of the harmless error test in *People v. Watson* (1956) 46 Cal.2d 818. (*People v. Epps* (2001) 25 Cal.4th 19, 29.) That test is whether, " 'after an examination of the entire cause, including the evidence,' [the reviewing court] is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, at p. 836; see also Cal. Const., art. VI, § 13; *People v. Zabelle, supra*, 80 Cal.App.5th at pp. 1112-1113.) " 'A "reasonable probability" "does not mean more likely than not, but merely a *reasonable chance*, more than an *abstract possibility*." [Citation.] It "does not mean 'more likely than not,' but merely 'probability sufficient to undermine confidence in the outcome.' " [Citation.]' " (*People v. Rodriguez* (2021) 68 Cal.App.5th 301, 324.) The *Watson* test "focuses not on what a reasonable jury *could* do, but what such a jury is *likely* to have done in the absence of the error under consideration." (*People v. Breverman* (1998) 19 Cal.4th 142, 177.) Reversal is necessary when there exists " 'at least such an equal balance of reasonable probabilities as to leave the court in serious doubt as to whether the error affected the result.' " (*People v. Mar* (2002) 28 Cal.4th 1201, 1225; *People v. Watson, supra*, 46 Cal.2d at p. 837.)

This requires a two-step analysis. In the first step, we ask whether the facts underlying the improperly determined aggravating circumstances would have been established in a statutorily permissible manner. (*People v. Watson, supra*, 46 Cal.2d at p. 836; § 1170, subd. (b)(2).) Under *Watson*, this means we consider the comparative strength and weakness of the evidence supporting a finding of true against the evidence supporting a finding of not true. (*People v. Breverman, supra*, 19 Cal.4th at p. 177.) If there is at least "an equal balance of reasonable probabilities" between the two findings, reversal is required. (*Watson*, at p. 837; *People v. Mower* (2002) 28 Cal.4th 457, 484 [same].)

If all aggravating circumstances relied upon by the trial court would have been proved to the respective standards, any error was harmless. If not, we move to the second step in our analysis. (*People v. Dunn, supra*, 81 Cal.App.5th at p. 410, review granted.) Excluding any factors we cannot conclude would have been proven in a permissible manner, we examine the entire cause to see whether it is reasonably probable that the trial court would have imposed a more favorable result, i.e., a more lenient sentence. (See *People v. Price* (1991) 1 Cal.4th 324, 492 ["When a trial court has given both proper and improper reasons for a sentence choice, a reviewing court will set aside the sentence only if it is reasonably probable that the trial court would have chosen a lesser sentence had it known that some of its reasons were improper"], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.) A reasonable probability of a more favorable result exists where the improper factor was determinative for the sentencing court or where the reviewing court cannot determine whether the improper factor was determinative. (*People v. Avalos* (1984) 37 Cal.3d 216, 233.)

Here, the court improperly imposed the upper term based on defendant's recidivism, prior prison term, and poor performance on parole and probation (as well as PRCS). There were no certified records of convictions introduced to prove the existence of defendant's prior convictions and the other factors were not stipulated to by the defendant or submitted to the jury or court and tested beyond a reasonable doubt. The prosecutor argued that defendant stipulated that the facts stated in the probation report were the basis for his plea. However, that stipulation did not encompass everything contained in probation report but only "a prima facie factual basis for the plea." (*People v. Marlin* (2004) 124 Cal.App.4th 559, 572.) These facts were found in the section detailing the offense based on the police report, not in the attachment summarizing defendant's criminal history. Some appellate courts have deemed reliance on a probation report to impose the upper term harmless error, because the information in the report "is readily available from official records." (See *People v. Flores* (2022) 75 Cal.App.5th

9

495, 501.) In *Zabelle*, we declined to adopt that reasoning. (*People v. Zabelle, supra*, 80 Cal.App.5th at p. 1115, fn. 6.) "If the record is insufficient to support a trial court's findings about a defendant's criminal history, we will not presume the existence of extrarecord materials, however likely they are to exist, to address this insufficiency." (*Ibid.*)

Further, the trial court indicated, as did the prosecutor, that defendant's "prior convictions as an adult are numerous *and* of increasing seriousness in nature" was a determinative factor in selecting the upper term. (Italics added.) The issue of the increasing seriousness of defendant's convictions depends on a vague and subjective standard involving comparison of defendant's various misdemeanor and felony convictions over 35 years. (*People v. Sandoval, supra*, 41 Cal.4th at p. 840 ["to the extent a potential aggravating circumstance at issue in a particular case rests on a somewhat vague or subjective standard, it may be difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court"].) The majority of defendant's convictions were for misdemeanors. Defendant was convicted for aggravated assault twice (§ 245, subd. (a)(1)), but the first conviction was in 1989 and the second was in 2013. Since then, defendant was convicted for parole and PRCS violations and three felonies, none of which qualifies as a violent or serious felony under the three strikes law (§§ 667.5, subd. (c), 1170.12, subd. (b)(1), 1192.7, subd. (c)). Therefore, we conclude there is a reasonable probability that the jury would have found this circumstance not true.

What remains is an examination of whether there is a reasonable probability that defendant would have received a more lenient sentence based solely on his admission that he committed the offense while on PRCS. The record indicates that other factors, particularly the increasing seriousness of defendant's crimes, were determinative for the trial court. In other words, the record does not disclose that the trial court would have

exercised its discretion to impose an upper term sentence based only on the single permissible factor that the crime was committed while defendant was on PRCS. Because we cannot conclude that the trial court would have selected an upper term sentence based on this factor alone, we conclude that remand is necessary to allow the trial court to exercise its discretion consistent with the recent amendments to section 1170.[5]

## II

### *Penal Code section 2900.5*

Defendant additionally argues that we "should ensure that [defendant] receives full custody credit for his Butte County case, including all time spent in Butte County jail following conviction in Stanislaus County." The issue as defendant frames it is that "[h]is sentence on the Stanislaus County case is only eight months, yet he is receiving credit on that case of 491 days, while only receiving credit for 12 days on his three year sentence in the Butte County case." This allocation between the two cases means that some days in custody for which defendant is entitled to credit will go unused against a sentence, contrary to the California Supreme Court's holding that section 2900.5[6] should not be applied so that a period served in custody is " 'dead time,' that is, time spent in custody for which [the defendant] receives no benefit." (*In re Marquez* (2003) 30 Cal.4th 14, 20; see also *People v. Phoenix* (2014) 231 Cal.App.4th 1119, 1128-1129; *People v. Torres* (2012) 212 Cal.App.4th 440, 444-447; *People v. Gonzalez* (2006)

---

[5] Since we remand for resentencing, we need not consider defendant's ineffective assistance of counsel claim, faulting defense counsel for failure to object to the trial court's use of the probation report to impose an upper term sentence.

[6] Section 2900.5, subdivision (a) provides that days a defendant is in custody presentencing shall be credited to the period of confinement. Section 2900.5, subdivision (b) provides in relevant part that custody "credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed."

138 Cal.App.4th 246, 254.)

Presumably, defendant seeks to have his custody credits in the Stanislaus County case allocated to the instant Butte County case. However, defendant does not suggest any remedy for this claimed misallocation other than remand to the trial court for further proceedings. (See *People v. Gonzalez, supra*, 138 Cal.App.4th at p. 254 [objection to credit allocation should be addressed first by counsel in the trial court].) The People agree, as do we, that on remand the trial court can address defendant's concerns about allocation custody credits. (*People v. Ramirez* (2019) 35 Cal.App.5th 55, 64 [" 'When a case is remanded for resentencing by an appellate court, the trial court is entitled to consider the entire sentencing scheme' "].) We will remand for a full resentencing.

## DISPOSITION

The sentence is vacated and the case remanded for resentencing consistent with section 1170, subdivision (b), as amended by Senate Bill 567. At the resentencing hearing, the court may reconsider all of its sentencing choices.

/s/
EARL, J.

We concur:

/s/
RENNER, Acting P. J.

/s/
KRAUSE, J.

12