# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,
Plaintiff and Respondent,

v.

CHRISTOPHER LEE COFER,
Defendant and Appellant.

S286297

Sixth Appellate District
H050122

Monterey County Superior Court
20CR010763, 20CR008059, 21CR000245,
21CR001076, 21CR001243

---

June 25, 2026

Chief Justice Guerrero authored the opinion of the Court, in which Justices Corrigan, Liu, Kruger, Groban, Evans, and Chou[*] concurred.

---

[*]    Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

PEOPLE v. COFER

S286297

Opinion of the Court by Guerrero, C. J.

After reaching a plea agreement with the prosecution, defendant Christopher Lee Cofer was sentenced at a single hearing on five separate pending criminal cases. Defendant had been in presentence custody for extended periods in some of these cases and for shorter periods in others. In imposing sentence, the trial court awarded defendant custody credits in each case that reflected the time he spent in custody in that specific case. Below, a divided Court of Appeal agreed with defendant that under Penal Code section 2900.5[1] he should receive presentence custody credits in each of his five cases for all the time he served in custody on any of these cases, except for custody time that preceded his arrest in a particular case. (*People v. Cofer* (2024) 103 Cal.App.5th 333, 341–342 (*Cofer*).) The Court of Appeal reasoned that the resolution of these cases through a single sentencing hearing meant that they all involved the same "proceedings" for purposes of section 2900.5, subdivision (b), under which "the custody to be credited" against a sentence must be "attributable to proceedings related to the same conduct for which the defendant has been convicted." (See *Cofer*, at p. 341.) This interpretation of the statute, if correct, would result in defendant receiving more than 300 additional

_____

[1] All subsequent undesignated statutory references are to the Penal Code.

days of custody credit on his lead (six-year) term, relative to credits awarded by the trial court.

We disagree with the Court of Appeal's interpretation of section 2900.5. Applying conventional statutory analysis, we conclude that "proceedings," as used in section 2900.5, subdivision (b), is properly understood as referring to an individual criminal case. As such, custody credit is not automatically applied across multiple, distinct prosecutions merely because those cases are resolved and sentenced at a single hearing. In this case, that means that the trial court correctly interpreted the statute in awarding credits in each case for the time defendant spent in custody in that matter, rather than awarding him credit in each case for time served in other cases. Accordingly, we reverse the judgment of the Court of Appeal.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

As noted, this case involves the award of presentence credit in five separate criminal cases that were resolved at a single sentencing hearing.

Defendant was arrested in case No. 20CR008059 (case A)[2] on September 27, 2020. In case A, he was charged with vehicle burglary (§ 459); possession of burglar's tools (§ 466); driving without a license (Veh. Code, § 12500, subd. (a)); and grand theft of personal property (Pen. Code, § 487, subd. (a)), with it being alleged that these crimes all occurred on or about September 27,

---

[2]  Like the majority below, we refer to defendant's five cases as cases A, B, C, D, and E. (See *Cofer*, *supra*, 103 Cal.App.5th at pp. 335–336.)

2020. Two prior strike convictions were also alleged. (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)

Defendant was arraigned two days later, with bail being set at $60,000. On November 10, 2020, defendant posted bail and was released.

On December 18, 2020, while out on bail, defendant was charged in case No. 20CR010763 (case B) with vehicle burglary (§ 459) and grand theft of an access card and access card account information (§ 484g), with the complaint alleging that both offenses occurred on or about September 26, 2020. The complaint alleged one prior strike conviction. (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)

Almost a month later, on January 14, 2021, defendant was charged in case No. 21CR000245 (case C) with second degree burglary (§ 459) and vandalism under $400 (§ 594, subd. (b)(2)(A)).[3] The complaint also alleged a prior strike conviction. (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).)

Defendant was arrested and taken into custody in cases B and C on January 12, 2021. He was arraigned in both cases on January 14, 2021, and was released on his own recognizance on January 18, 2021.

On February 13, 2021, defendant was arrested in his final two cases. Three days later, he was charged in case No. 21CR001076 (case D) with second degree burglary (§ 459); possession of burglar's tools (§ 466); and possession of

---

[3] The complaint in case C averred that defendant committed both criminal offenses alleged therein on or about January 9, 2021. Therefore, he was out on bail in case A when he allegedly committed the acts comprising his two offenses in case C.

drug paraphernalia (Health & Saf. Code, § 11364, subd. (a)). The complaint also contained one prior strike allegation (Pen. Code, §§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1)) and alleged that defendant committed the charged offenses on or about February 13, 2021, while released on bail or on his own recognizance (§ 12022.1, subd. (d)).

On February 19, 2021, defendant was charged in case No. 21CR001243 (case E) with second degree burglary (§ 459). The complaint also alleged a prior strike. (§§ 667, subds. (d), (e)(1), 1170.12, subd. (c)(1).) Although the complaint did not include an allegation that the offense was committed while defendant was released on bail or on his own recognizance, it stated defendant committed the burglary on or about January 12, 2021.

Defendant was arraigned on February 16, 2021, in case D, and bail was set at $120,000. He was arraigned in case E on March 3, 2021, and bail was set at $20,000. Defendant remained in custody in both cases D and E. At that time, he remained out of custody in cases A, B, and C.

On August 10, 2021, the People moved to consolidate all five of defendant's cases. Defendant opposed the motion. Apparently, the trial court never heard the motion.

On August 18, 2021, the trial court declared a doubt regarding defendant's competency to stand trial, suspended criminal proceedings in all five cases, revoked defendant's bail in case A, and remanded defendant to custody in cases B and C. After defendant was determined to be competent, criminal proceedings were reinstated on September 1, 2021. Defendant was released on his own recognizance in cases A and B but remained in custody in cases C, D, and E.

Defendant resolved all five cases by plea agreement a few months later. On January 26, 2022, defendant pleaded no contest to felony second degree burglary in cases A, B, and C and misdemeanor second degree burglary in cases D and E. He also admitted a strike allegation in case B. The rest of the charges in all five cases were dismissed with waivers under *People v. Harvey* (1979) 25 Cal.3d 754 (*Harvey*).[4] On March 25, 2022, the court remanded defendant into custody in cases A and B pending sentencing, at which point defendant was in custody on all five cases.

Consistent with the parties' agreement, on March 30, 2022, the trial court sentenced defendant to a six-year term in case B and shorter concurrent terms in the other cases. In case A, the court awarded presentence credits of 66 actual custody and 66 days conduct credit; in case B, the court awarded 21 days of actual custody and 20 days conduct credit; in case C, the court awarded 225 days of actual custody and 224 days conduct credit; in cases D and E, the court deemed the sentences served with 183 days of actual custody and 182 days conduct credit in each.

Defendant filed a timely notice of appeal, and the trial court granted a certificate of probable cause to challenge the calculation of presentence custody credits. Defendant then

---

[4] A *Harvey* waiver is a defendant's agreement, as part of a plea bargain, to allow the sentencing court to consider facts supporting dismissed counts. (See generally *Harvey*, *supra*, 25 Cal.3d at p. 758.)

moved in the trial court under section 1237.1[5] to correct his presence credits. Specifically, defendant requested an award of additional presence credit for the time that he was on bail or on his own recognizance in cases A, B, and C while simultaneously in custody in cases D and E. He also asked that any presence credits in excess of the one-year sentences deemed served in the misdemeanor cases D and E be "applied to another case, where a longer term of incarceration was imposed."

Defendant supported his motion with a summary of his custody status in each case. For case A, defendant represented he was in custody from September 27 to November 10, 2020; out on bail from November 10, 2020, to August 18, 2021; in custody from August 18 to September 1, 2021; released on his own recognizance from September 1, 2021, to March 25, 2022; and back in custody on March 25, 2022, until he was sentenced in this matter. In case B, defendant was assertedly in custody January 12 to January 18, 2021; released on his own recognizance from January 18 to August 18, 2021; in custody on August 18 to September 1, 2021; out of custody beginning September 1, 2021, and then back in custody on March 25, 2022,

---

[5] Section 1237.1 provides: "No appeal shall be taken by the defendant from a judgment of conviction on the ground of an error in the calculation of presence custody credits, unless the defendant first presents the claim in the trial court at the time of sentencing, or if the error is not discovered until after sentencing, the defendant first makes a motion for correction of the record in the trial court, which may be made informally in writing. The trial court retains jurisdiction after a notice of appeal has been filed to correct any error in the calculation of presence custody credits upon the defendant's request for correction."

until he was sentenced in this matter. For case C, defendant stated he was in custody from January 12 to January 18, 2021; released on his own recognizance from January 18 to August 18, 2021; and remained in custody from August 18, 2021, until he was sentenced in this matter. And for cases D and E, defendant maintained he was in custody beginning February 13, 2021, until he was sentenced in both matters.

Following *People v. Jacobs* (2013) 220 Cal.App.4th 67, which held that a defendant sentenced in two separate criminal cases at a single hearing was entitled to presentence custody credit only for custody related to the specific case for which he was sentenced (*id*. at pp. 83–84), the trial court denied the request for additional presentence credits, finding that defendant was not entitled to further credits for cases where he remained on bail or was released on his own recognizance while in presentence custody in other cases. However, the trial court awarded seven additional custody credits in both cases B and C based on its interpretation of the records defendant submitted in support of the motion. The court denied defendant's request to reduce his term of imprisonment with the credits exceeding one year in cases D and E, noting that defendant had received credit for that time in case C.

Defendant appealed. A divided Court of Appeal reversed the judgment, with the majority concluding that defendant was entitled to custody credit in all cases for any time that he was in custody in any of the five cases, provided that the custody to be applied did not precede defendant's arrest in a particular case. (*Cofer*, *supra*, 103 Cal.App.5th at pp. 335, 342.)

The *Cofer* majority premised its holding on the first sentence of section 2900.5, subdivision (b), which provides, "For

the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted." The majority concluded that this sentence was ambiguous as applied to defendant's situation. (*Cofer, supra*, 103 Cal.App.5th at p. 340.) It reasoned that the phrase, " 'attributable to proceedings related to the same conduct' " could support two different interpretations. (*Ibid*.) First, that phrase could be interpreted consistent with *Jacobs* so that "each criminal case must be considered a separate proceeding even if resolved and sentenced at the same time." (*Ibid*.) In that circumstance, the award of presentence custody credits for each criminal case would be calculated based on the time a defendant spent in custody in that specific case. Alternatively, the court reasoned, the subject phrase "could also mean that a defendant is entitled to credit in all cases that are resolved and sentenced together for all custody attributable to all conduct in those cases occurring after the defendant's arrest in any given case." (*Id*. at pp. 340–341.) Under that interpretation, a defendant would receive credit for all days of actual custody without regard to the defendant's technical custody status in any particular case. (*Id*. at p. 341.)

The *Cofer* majority concluded "the latter interpretation [is] more consistent with the purposes of awarding presentence credit, and it is not foreclosed by any Supreme Court authority." (*Cofer, supra*, 103 Cal.App.5th at p. 341.) In rejecting the People's argument that the court's approach would create a windfall for defendant, the majority stated that its "decision ensures equal treatment between defendant and individuals who could afford bail on additional cases." (*Ibid*.)

A dissent concluded that the majority's interpretation conflicted with section 2900.5's text, our previous interpretations of that statute in *People v. Bruner* (1995) 9 Cal.4th 1178 (*Bruner*) and *In re Joyner* (1989) 48 Cal.3d 487 (*Joyner*), and what the dissent perceived as a well-established understanding among trial counsel and courts regarding how the statute operates. (*Cofer*, *supra*, 103 Cal.App.5th at pp. 342–343, 344, 346–348 (dis. opn. of Lie, J.).) The dissent explained it "read section 2900.5 to mean that credit for a single period in presentence custody will be given against multiple concurrent sentences imposed in multiple cases, so long as the presentence custody is attributable to each of those cases." (*Id.* at p. 343 (dis. opn. of Lie, J.).) It concluded defendant was not entitled to custody credit in cases A and B for custody time accrued only in his other cases, stating, "That all cases were later sentenced in a single coordinated hearing did not retroactively change [defendant's] release status in cases A, B, and C or expand the bases for his confinement in cases D and E." (*Id.* at pp. 343–344 (dis. opn. of Lie, J.).)

We granted review to address the apparent conflict between *Jacobs* and *Cofer*.

## II. DISCUSSION

### A. Section 2900.5

Subdivision (a) of section 2900.5 provides for the award of credits at sentencing for time a defendant has already spent in custody. These credits reduce the length of time a defendant spends incarcerated following conviction and sentencing. This subdivision states in relevant part that in "all felony and misdemeanor convictions . . . when the defendant has been in custody, including, but not limited to, any time spent in a jail,

camp, work furlough facility, halfway house, rehabilitation facility, hospital, prison, juvenile detention facility, or similar residential institution, all days of custody of the defendant, including days . . . credited to the period of confinement pursuant to Section 4019 . . . shall be credited upon his or her term of imprisonment." (§ 2900.5, subd. (a).)

Subdivision (b) of section 2900.5, meanwhile, limits the application of the custody credits authorized in subdivision (a). Subdivision (b) provides, "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to proceedings related to the same conduct for which the defendant has been convicted. Credit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed." (§ 2900.5, subd. (b).) Because defendant did not receive any consecutive sentences, we are only concerned with the first sentence of subdivision (b).

## B. This Court's Precedent Interpreting Section 2900.5

We have interpreted section 2900.5 on multiple occasions. (See, e.g., *In re Marquez* (2003) 30 Cal.4th 14, 20 (*Marquez*); *Bruner*, *supra*, 9 Cal.4th at pp. 1180, 1192; *Joyner*, *supra*, 48 Cal.3d at p. 489; *In re Rojas* (1979) 23 Cal.3d 152, 155–156 (*Rojas*).) Our prior decisions have articulated a "strict causation" rule for the award of custody credits. (*Joyner*, at p. 489.) Pursuant to this standard, custody will not be credited under section 2900.5, subdivision (b) absent a showing that the conduct that underlies the term to be credited was a " 'but for' " cause of the earlier restraint. (*Bruner*, at p. 1194; see *id*. at p. 1193; *Joyner*, at p. 489 ["a period of time previously credited against a sentence for unrelated offenses cannot be deemed

'attributable to proceedings' resulting in a later-imposed sentence unless it is demonstrated that the claimant would have been at liberty during the period were it not for a restraint relating to the proceedings resulting in the later sentence"]; *Rojas*, at p. 156 ["Section 2900.5 does not authorize credit where the pending proceeding has no effect whatever upon a defendant's liberty"].)

Notably, these cases have addressed situations in which a defendant was sentenced in at least two cases at different times, with the issue being how to apply presentence custody credit to a sentence imposed in the latter case. In this context, we have (1) determined that section 2900.5 did not entitle a defendant to credit toward his sentence for a period of presentence custody when, during that same period, he was serving a prison term for a prior unrelated offense (*Rojas*, *supra*, 23 Cal.3d at p. 154); (2) concluded that a defendant serving a sentence pursuant to convictions incurred in Florida who was placed under a custodial "hold" associated with a pending case in California could not receive presentence credits against his subsequently imposed California sentence for the time the hold was in place, when such time was already being credited against his earlier imposed Florida sentence (*Joyner*, *supra*, 48 Cal.3d at p. 489);[6] and (3) held a defendant was not entitled to presentence custody credit for his concurrent sentence for a drug offense when that drug offense was only one of "multiple, unrelated incidents of misconduct" giving rise to his previous term of incarceration for

---

[6]     In *Joyner*, we also criticized our prior interpretation of section 2900.5, subdivision (b) in *In re Atiles* (1983) 33 Cal.3d 805 (*Atiles*), wherein we suggested maximizing the application of custody credits was required under the statute. (*Joyner*, *supra,* 48 Cal.3d at pp. 494–495.)

a parole violation (*Bruner, supra,* 9 Cal.4th at p. 1193; see *id.* at p. 1194).[7]

We also have clarified that the requirement of " 'strict causation' . . . is applicable in cases involving the possibility of *duplicative credit* that might create a windfall for the defendant." (*Marquez, supra,* 30 Cal.4th at p. 23.) Thus, in *Marquez,* we concluded that a defendant serving a sentence should receive credit for time in custody that, at the time it was served, owed both to a sentence imposed in one matter and to a custodial hold arising out of a different case filed in another county, in a circumstance where the earlier convictions were later reversed and the charges dismissed. (*Id.* at p. 20.) We explained, "once Santa Cruz County dismissed its charges, all custody following Monterey County's hold, including the period between petitioner's sentencing in Santa Cruz County and his Monterey County sentencing, is properly characterized as 'attributable to [the Monterey County] proceedings related to the same conduct for which the defendant has been convicted.' " (*Ibid.*)

In each of the cases described above, we determined that custody credit could only be applied in cases where the subject presentence custody was ultimately attributable to the underlying proceeding in which the defendant was sentenced. (See, e.g., *Marquez, supra,* 30 Cal.4th at pp. 20–21; *Rojas, supra,* 23 Cal.3d at p. 156.) But these cases all concerned multiple proceedings that were resolved at separate hearings (see, e.g., *Joyner, supra,* 48 Cal.3d at p. 489 ["duplicative credits against

---

[7]    We overruled *Atiles* to the extent it reached a contrary conclusion to our holding in *Bruner.* (*Bruner, supra,* 9 Cal.4th at p. 1194.)

*separately imposed* concurrent sentences for unrelated offenses will be granted only on a showing of strict causation" (italics added)].) None of our decisions establish how the statutory requirement that presentence custody be "attributable to proceedings related to the same conduct for which the defendant has been convicted" (§ 2900.5, subd. (b)) applies in a case like this, where a defendant was sentenced to concurrent terms at a single hearing pursuant to a plea agreement that resolved several different cases.

### C. Text of Section 2900.5, Subdivision (b) and Legislative History

Because our prior decisions do not provide a definitive answer to the question before us, we return to the statute. " 'When we interpret a statute, "[o]ur fundamental task . . . is to determine the Legislature's intent so as to effectuate the law's purpose. We first examine the statutory language, giving it a plain and commonsense meaning. . . . If the language is clear, courts must generally follow its plain meaning unless a literal interpretation would result in absurd consequences the Legislature did not intend. If the statutory language permits more than one reasonable interpretation, courts may consider other aids, such as the statute's purpose, legislative history, and public policy." [Citation.] "Furthermore, we consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." ' " (*City of San Jose v. Superior Court* (2017) 2 Cal.5th 608, 616–617.)

Section 2900.5, subdivision (b) does not define "proceedings," so we look to its " ' "plain meaning . . . as understood by the ordinary person." ' " (*People v. Walker* (2024)

16 Cal.5th 1024, 1035.) A proceeding has been defined as a "legal action." (Merriam-Webster's Collegiate Dictionary (11th ed. 2003) p. 990, col. 1.) According to Black's Law Dictionary, "proceeding" means "[t]he regular and orderly progression of *a lawsuit*, including all acts and events between the time of commencement and the entry of judgment." (Black's Law Dict. (12th ed. 2024) p. 1459, col. 1, italics added.) Within the context of section 2900.5, subdivision (b), these definitions support an interpretation of "proceedings" as referring to a specific legal action filed against a criminal defendant — in other words, a criminal case.

Further examination of the statute's language corroborates this interpretation of "proceedings." (§ 2900.5, subd. (b).) Subdivision (b) limits credits "only" to custody that "is *attributable to* proceedings related to the same conduct for which the defendant has been convicted." (*Ibid.*, italics added.) This language connecting custody time to "proceedings related to the same conduct" reinforces that "proceedings" (*ibid*.) is concerned with separate cases arising from distinct acts and arrests, not a sentencing hearing. This makes sense; defendant's time in custody was "attributable to" (§ 2900.5, subd. (b)) the entire course of proceedings in his individual cases, including the decisions to place defendant in custody that occurred as those cases independently unfolded. (See *Smith v. Superior Court* (2006) 39 Cal.4th 77, 83 [explaining that in interpreting statutory language " 'we give "significance to every word, phrase, [and] sentence" ' "].) Conversely, it is not sensible to regard this custody time as somehow "attributable to" (§ 2900.5, subd. (b)) the joint sentencing hearing that came only after custody time was served. Such an interpretation would

assign that hearing causal significance in relation to defendant's custody time that it clearly does not possess.

An interpretation of "proceedings" (§ 2900.5, subd. (b)) as concerned with a specific case is also consistent with other Penal Code statutes and case law that equate a "proceeding" with an individual action. For example, section 683 states, "The proceeding by which a party charged with a public offense is accused and brought to trial and punishment, is known as a criminal action." (See also *Burns v. Superior Court* (1903) 140 Cal. 1, 6 [" 'In its more general sense, in law, [proceeding] means all the steps or measures adopted in the prosecution or defense of an action' "]; *Cofer*, *supra*, 103 Cal.App.5th at p. 345 (dis. opn. of Lie, J.) [" 'proceeding' turns on the operative charging documents that allege the criminal conduct for which the People seek punishment, not on a purely procedural decision to coordinate scheduling for multiple actions"].)

This understanding of how section 2900.5, subdivision (b) should apply here is also consistent with our case law concerning the resolution of multiple cases at a single hearing. In *People v. Soria* (2010) 48 Cal.4th 58 (*Soria*), for example, we addressed the levying of restitution fines in such a situation. There, the defendant was separately charged in three different cases. He entered negotiated pleas in all three cases at a single hearing, and the trial court ordered restitution fines in each case

under section 1202.4, subdivision (b)[8] and section 1202.45.[9] (*Soria*, at p. 62.) The defendant appealed, arguing that imposing separate fines in each case was unauthorized. The Court of Appeal agreed. (*Ibid*.) In rejecting the appellate court's conclusion, we explained: "When several cases are resolved by a single plea bargain in which the defendant enters separate pleas, it is plain that there is one bargain but multiple cases." (*Id*. at p. 65.) Absent consolidation, "separately filed cases remain separate for purposes of the restitution statutes, even when they are jointly resolved at the plea and sentencing stages. In the context of sections 1202.4[, subdivision ](b) and 1202.45, a 'case' is a formal criminal proceeding, filed by the prosecution and handled by the court as a separate action with its own number." (*Id*. at pp. 64–65.) "Defendants who commit multiple crimes, and are consequently before the court in multiple cases when their pleas are taken, are properly subject to multiple fines." (*Id*. at p. 66.)

The rationale we enunciated in *Soria* applies here, too. The expediency of resolving all five of defendant's cases under one plea bargain and at a single sentencing hearing did not transform multiple cases into one proceeding for purposes of

---

[8] "Section 1202.4[, subdivision ](b) requires the court to impose 'a separate and additional restitution fine' of not less than $200 or more than $10,000 '[i]n every case where a person is convicted of a crime,' absent 'compelling and extraordinary reasons for not doing so.'" (*Soria, supra*, 48 Cal.4th at p. 62.)

[9] "Section 1202.45 . . . requires 'an additional parole revocation restitution fine in the same amount as that imposed pursuant to subdivision (b) of Section 1202.4,' '[i]n every case where a person is convicted of a crime and [the] sentence includes a period of parole . . . .'" (*Soria, supra*, 48 Cal.4th at p. 62.)

awarding custody credits pursuant to section 2900.5, subdivision (b).

In this respect, we find unpersuasive the Court of Appeal's interpretation of "proceedings" as equivalent to a coordinated hearing.[10] (See *Cofer*, *supra*, 103 Cal.App.5th at pp. 340–341.) Rather, as the dissent below noted, " 'California courts have long recognized that the term "proceedings" is broader than the term "hearings." [Citations.] Indeed, . . . any attempt to equate the two "flies in the face of the ordinary meaning of 'proceedings.' " ' " (*Cofer*, at p. 344 (dis. opn. of Lie, J.).) "[A] legal proceeding may well have several stages" (*Gipe v. Superior Court* (1981) 124 Cal.App.3d 617, 626), of which a sentencing hearing is merely one. We find no basis to conclude that the Legislature intended "proceedings" to carry a different meaning in section 2900.5, subdivision (b). The fact that multiple, open criminal cases against a defendant are resolved at a single hearing does not change the definition of proceedings or otherwise render that term ambiguous in the context of awarding custody credits pursuant to section 2900.5, subdivision (b).

Nor are we persuaded by defendant's argument that an interpretation of "proceedings" (§ 2900.5, subd. (b)) as concerned with individual cases would improperly elevate form over substance. Specifically, defendant claims that "custody labels should not dictate a defendant's statutory right to presentence

---

[10]  The fact that the Legislature used the plural term "proceedings" in section 2900.5, subdivision (b) does not alter our interpretation here. As the Attorney General observes, in the Penal Code, "[w]ords used in the singular number includes the plural, and the plural the singular." (§ 7, subd. (a).)

credits, especially when they do not reflect reality." Yet, as the Attorney General observes, defendant's "custody status in his various cases was not 'purely technical' . . . but the product of how the separate proceedings unfolded in light of the court's rulings and the parties' litigating positions." And in critiquing one perceived technicality, defendant's argument for receiving additional credits relies wholly on the fact that, for whatever reason, his cases happened to be sentenced at the same hearing. More importantly, in interpreting section 2900.5, subdivision (b), we are constrained by the actual words of the statute. (See *Vasquez v. State of California* (2008) 45 Cal.4th 243, 253.) The text of this provision clearly contemplates that custody credits be awarded in a particular case commensurate with time spent in custody in that case. Even if this means that mere "custody labels" control in a situation such as this, the plain import of the text establishes that the Legislature intended such a result.

In sum, we construe the word "proceedings," as used in section 2900.5, subdivision (b), as contemplating a single case — meaning that custody credits under the statute can be awarded in a particular case only when the custody time involved is attributable to that case. In a matter like the one before us, in which a defendant is being sentenced in multiple, unrelated criminal cases at a single hearing, "credit for a single period in presentence custody will be given against multiple concurrent sentences imposed in multiple cases, so long as the presentence

custody is attributable to each of those cases." (*Cofer*, *supra*, 103 Cal.App.5th at p. 343 (dis. opn. of Lie, J.).)[11]

Although the clarity of the statutory language as a whole makes it unnecessary to delve deeply into the legislative history, the circumstances behind the addition of the term "proceedings" to section 2900.5, subdivision (b) provide no reason to question our interpretation of the statute.

When first enacted in 1971, section 2900.5, subdivision (b) read, "For the purposes of this section, credit shall be given only where the custody to be credited is attributable to charges arising from the same criminal act or acts for which the defendant has been convicted." (Stats. 1971, ch. 1732, § 2, p. 3686.) Thus, at its inception, section 2900.5, subdivision (b) tethered the applicable custody credit to a specific charge or charges, so long as those charges were based on the same criminal act or acts — making it even more limited than its current form. Linking presentence custody to a certain charge

---

[11] The " 'strict causation' " rule we have developed and applied in other contexts (*Bruner*, *supra*, 9 Cal.4th at p. 1193) does not prohibit such application of custody credits in this situation. Here, even dealing with sentences involving multiple proceedings, we are not concerned with the possibility of awarding presentence credit to a sentence in one case that was already applied to a sentence in an earlier, unrelated conviction. (See *Joyner*, *supra*, 48 Cal.3d at p. 489.) Under the circumstances, time spent in presentence custody in a particular case is fairly deemed "attributable to" that case (§ 2900.5, subd. (b)) even when it coincides with time spent in presentence custody in another case. For example, despite defendant being in custody in cases C, D, and E simultaneously, he is entitled to credit for the presentence custody time served in each of those cases so long as that time is attributable to the case giving rise to the sentence.

(or even multiple charges) rather than the entire criminal case, created a situation in which a defendant might not receive custody credit in a proceeding in which the charge giving rise to the custody was ultimately dismissed, and the defendant was convicted of and sentenced on a different charge based on an entirely different criminal act.

In 1976, the Legislature amended section 2900.5, subdivision (b), to replace "charges arising from" with "proceedings related to." (See Stats. 1976, ch. 1045, § 2, p. 4666.) This change was one of several made to the statute at that time to clarify that time spent in certain nontraditional custodial settings qualified for custody credits. The rationale behind this amendment was described in one committee analysis as follows: "The provisions in the bill eliminating the limitation of creditable custody to that occurring between arrest and sentencing, and allowing credit for custody attributable to related proceedings, rather than related charges, are intended to require the granting of credit for time spent in the California Rehabilitation Center," a civil commitment facility. (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 3653 (1975–1976 Reg. Sess.) as amended Aug. 13, 1976, p. 5, underscoring omitted.) Although the effect of the 1976 amendments may have been to liberalize the charge-specific custody credit regime associated with the earlier version of the statute, we find no persuasive indication in the legislative history behind this change that in revising the statute the Legislature intended to assign a bespoke meaning to "proceedings" (§ 2900.5, subd. (b)) that would equate that term with sentencing hearings even when custody time is not naturally understood as "attributable to" (*ibid*.) such hearings.

### D. Defendant's Remaining Counterarguments Are Unpersuasive

Defendant advances several other arguments in support of his interpretation of section 2900.5, subdivision (b). We do not regard any of these contentions as persuasive.

First, defendant maintains that our case law articulating and applying the "strict causation" standard establishes that section 2900.5 limits the award of custody credits only in circumstances where a defendant seeks credit for time spent in custody *after* a conviction and sentence. Emphasizing that he just seeks presentence credits for time spent in custody before he was sentenced for all of his pending cases at a single hearing, defendant characterizes the Court of Appeal majority as having engaged in a straightforward application of the strict causation rule.

We disagree. Defendant's argument is irreconcilable with the plain language of section 2900.5, subdivision (b). As has already been explained, the statute limits custody credits to those earned in a specific case. On its face, this limitation applies to credits earned through custody served prior to any sentencing. In making his argument, defendant misreads our case law. The fact that we have denied credits in a later resolved case for time spent in custody following a conviction and sentence in another matter, as in *Rojas* and *Joyner*, does not mean that presentence credits are *always* available to a defendant for time spent in custody prior to conviction and sentence, without further consideration of the defendant's custodial status in a particular case.

Additionally, defendant provides no support for his position other than language from a dissent in *Joyner*. (See

*Joyner, supra,* 48 Cal.3d at p. 496 (dis. opn. of Broussard, J.) ["the applicable statute and established case law demonstrate that a defendant facing two unrelated charges is entitled to pretrial custody credit on each charge until he starts serving a term of imprisonment on one of them"].)  "[B]ut dissenting opinions are not binding precedent."  (*People v. Lopez* (2012) 55 Cal.4th 569, 585; see *People v. Panighetti* (2023) 95 Cal.App.5th 978, 1001 ["Dissenting opinions, of course, are not binding and have ' "no function except to express the private view of the dissenter" ' "].)  And in any event, the dissent does not help defendant here.  The dissent in *Joyner* based its reasoning on the fact that the custody for which the defendant sought credit was attributable, at least in part, to the charge that was comprising his sentence.  (*Joyner,* at p. 496 (dis. opn. of Broussard, J.) ["The defendant is nonetheless entitled to dual credit for multiple restraints before he begins serving a term; the defendant need only show that the charge as to which he seeks credit was a basis, not necessarily the exclusive basis, for the custody"].)  The same cannot be said here, where defendant seeks custody credit for presentence time served in unrelated criminal cases and not the underlying case for which he was sentenced.

Next, defendant cites isolated language in a footnote in *Bruner* to suggest that "when *concurrent* sentences are imposed at the same time, presentence custody is credited against all." (*Bruner, supra,* 9 Cal.4th at p. 1192, fn. 9.)  However, this language must be read in context.  There, we were discussing a 1978 amendment to section 2900.5.  (See Stats. 1978, ch. 304,

§ 1, p. 632.)[12] The language on which defendant relies appears in a sentence addressing the amendment's effect on sentences imposed in a single proceeding. But we also explained that "there is no indication the 1978 amendment was concerned with concurrent sentences for unrelated conduct imposed in *multiple proceedings*." (*Bruner*, at p. 1192, fn. 9.) The case before us involves multiple proceedings; so, the discussion of the 1978 amendment in this footnote does not apply.

Defendant also invokes *In re Sosa* (1980) 102 Cal.App.3d 1002 (*Sosa*) and *People v. Gonzalez* (2006) 138 Cal.App.4th 246 (*Gonzalez*) for the proposition that "trial courts often are urged to move earned presentence credits from one case to another to avoid dead time." Neither case is helpful to defendant's position here.

In *Sosa*, the appellate court was not addressing an argument to transfer presentence custody from one case to another under section 2900.5, subdivision (b). Instead, the court determined that the defendant's presentence custody credit applied against his parole term, not just his prison sentence. (*Sosa, supra*, 102 Cal.App.3d at pp. 1005–1006.) And although the court briefly discussed section 2900.5, subdivisions (a) and (c), that discussion has no bearing on the analysis of the issue before us. (See *Sosa*, at p. 1005.)

*Gonzalez* is no more instructive here than *Sosa*. In *Gonzalez*, the defendant was in custody due to three cases, and

---

[12] "The [1978] amendment added a second sentence to section 2900.5, subdivision (b), providing that '[c]redit shall be given only once for a single period of custody attributable to multiple offenses for which a consecutive sentence is imposed.'" (*Bruner, supra*, 9 Cal.4th at p. 1192, fn. 9.)

his presentence credit exceeded the total sentence on his first case. (*Gonzalez, supra*, 138 Cal.App.4th at pp. 248–249, 251.) The Court of Appeal held that the remaining credit for that custody period was attributable to the defendant's first two cases and thus should be applied to the sentence in the defendant's second case. (*Id.* at p. 252.) The appellate court emphasized that the case before it was like the one we addressed in *Marquez, supra*, 30 Cal.4th 14. (See *Gonzalez*, at pp. 252–254.) The court explained: "The credits . . . were only awarded against a single case . . . . However, once the few days of custody left to complete the sentence in [that case] were credited to defendant, the remaining custodial time should have been characterized as solely attributable to the [second] case and allocated accordingly." (*Id.* at p. 254.) The same is not true here. It is undisputed that some of defendant's presentence custody is not attributable to all the cases for which he was ultimately sentenced. *Gonzalez* does not support transferring credits to a case in which the custody giving rise to those credits is not attributable.

Defendant also echoes the Court of Appeal majority's assessment that its interpretation of section 2900.5, subdivision (b) functions to ensure "equal treatment between defendant and individuals who could afford bail on *additional* cases." (*Cofer, supra*, 103 Cal.App.5th at p. 341, italics added.) That is to say, the Court of Appeal majority saw its interpretation of subdivision (b) as benefitting defendants who are charged in multiple criminal cases, especially those defendants who commit additional crimes while out on bail. But, as previously explained, there is no indication that the Legislature intended subdivision (b) of section 2900.5 to apply across multiple, separate criminal actions. (See *Atiles, supra,*

33 Cal.3d at p. 814 (dis. opn. of Mosk, J.) ["I doubt that the Legislature intended to bestow a special benefit on recidivists"].) And, of course, defendant still received credit in the appropriate cases for all of the time he spent in custody; he is simply not receiving credit in all of his cases for the days he served in any of them merely because he was sentenced in all of the cases at the same hearing. The policy rationale given by the Court of Appeal majority does not justify an additional award of credits that would contravene the text and plain meaning of section 2900.5, subdivision (b). (See *Skidgel v. California Unemployment Ins. Appeals Bd.* (2021) 12 Cal.5th 1, 26; *Torres v. Automobile Club of So. California* (1997) 15 Cal.4th 771, 782 [where "the application of firmly established rules of statutory construction" establish a statute's meaning, we "may not rest" our decision "on the weighing and balancing of public policy considerations"].)

Defendant's reliance on *People v. Kunath* (2012) 203 Cal.App.4th 906 (*Kunath*) is similarly misplaced. The defendant in *Kunath* was charged in two separate cases; he made bail in the first case but was remanded to custody in the second. (*Id.* at p. 909.) The appellate court determined that the defendant was entitled to full credit of all presentence custody in both cases, which were sentenced at a single hearing. The court explained, "Where . . . the defendant's custody is solely presentence on all charges and he is simultaneously sentenced on all charges to concurrent terms, the policy behind section 2900.5 applies. Presentence custody credits must apply to all charges to equalize the total time in custody between those who obtain presentence release and those who do not." (*Id.* at p. 911.)

The *Kunath* opinion does not clearly convey the defendant's custody status in each case at all relevant times; at multiple junctures it refers to the defendant before the court as seeking credit for time spent in custody in "both cases." (*Kunath*, *supra*, 203 Cal.App.4th at pp. 909, 911.)  The court's precise holding is therefore somewhat difficult to discern.  To the extent that *Kunath* can be read as holding that the defendant before it was entitled to presentence custody credit in a case to which that credit was not attributable, the court was incorrect in light of the plain text of section 2900.5, subdivision (b), as we have explained.  Accordingly, we disapprove *People v. Kunath*, *supra*, 203 Cal.App.4th 906 to the extent that it is inconsistent with this opinion.

Finally, as the Attorney General observes, various mechanisms exist through which a defendant may be able to secure the application of custody credits to multiple separately charged and simultaneously pending cases.  For example, a defendant may seek to have duplicative or pooled custody credits included within any plea deal, or a defendant may request that release in one case be revoked upon placement in custody in another matter.  Additionally, it may be the case that a defendant, as Cofer asserts, could seek relief through a petition for a writ of habeas corpus, arguing his counsel was ineffective for not attempting to optimize the application of custody credits under section 2900.5, subdivision (b).

In sum, we interpret the term "proceedings," as used in section 2900.5, subdivision (b), as synonymous with a criminal case.  As such, under subdivision (b), presentence credit that is to be applied must be attributable to the criminal case in which a defendant is being sentenced.  This approach "produces fair and reasonable results in a majority of cases, and . . . can be

readily understood and applied by trial courts." (*Joyner, supra,* 48 Cal.3d at p. 495.) As applied here, the trial court correctly interpreted the statute in awarding presentence custody credits to defendant's sentences; the Court of Appeal majority did not.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed, and the matter is remanded to that court for further proceedings consistent with this opinion.

**GUERRERO, C. J.**

**We Concur:**

**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**GROBAN, J.**
**EVANS, J.**
**CHOU, J.**[*]

---

[*]  Associate Justice of the Court of Appeal, First Appellate District, Division Five, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion**  People v. Cofer

_____

**Procedural Posture** (see XX below)
**Original Appeal**
**Original Proceeding**
**Review Granted (published)** XX 103 Cal.App.5th 333
**Review Granted (unpublished)**
**Rehearing Granted**

_____

**Opinion No.** S286297
**Date Filed:** June 25, 2026

_____

**Court:**  Superior
**County:**  Monterey
**Judge:**  Stephanie E. Hulsey

_____

**Counsel:**

Mary Jo Strnad, under appointment by the Supreme Court, for Defendant and Appellant.

Ron Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Jeffrey M. Laurence, Assistant Attorney General, Michael R. Johnsen, Amit Kurlekar, Victoria Ratnikova, Seth K. Schalit and Claudia H. Phillips, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Mary Jo Strnad
Attorney at Law
216-E Mount Hermon Road, Suite 252
Scotts Valley, CA 95066
(831) 471-8514

Claudia H. Phillips
Deputy Attorney General
455 Golden Gate Avenue, Suite 11000
San Francisco, CA 94102
(415) 510-3859